# Richmond.

VIRGINIA FIRE & MARINE INSURANCE CO. V. THOMAS.

GEORGIA HOME INSURANCE CO. V. SAME.

WESTERN ASSURANCE CO. V. SAME.

MOROTOCK INSURANCE CO. V. SAME.

SAME V. SAME.

MARCH 29th, 1894.

1. POLICY OF INSURANCE—*Conditions—Construction.*—It is now well settled that where two constructions may be placed on language of policy, the one most favorable to the insured is to be adopted, and in case of doubt, the terms are to be construed most strongly against the insurer.

2. IDEM—*Change of title—Case at bar.*—Clause avoiding policy if there should be any change in title or interest of assured unless company was notified in writing, where one of a firm assured, was a married woman whose husband managed her interest, and she died, bequeathing her property to her husband, remainder to her son, and the business was conducted as before until the fire. HELD : No such change as avoided the policy.

3. IDEM—*Tin shop—Manufacturing.*—A policy insuring a tin shop, though containing a provision against a manufacturing establishment, yet allows making tin cans and other such work as is usually done in such shops.

Error to five judgments of the circuit court of Culpeper county, rendered October 24, 1893, in the actions wherein W. A. Thomas, surviving partner of himself and Mrs. Ellen S. Stringfellow, late partners in the name of W. A. Thomas & Co., was plaintiff, and the Virginia Fire and Marine Insurance

Company was defendant, and in same against Georgia Home Insurance Company, and in same against Western Assurance Company, and in two actions wherein same was plaintiff and the Morotock Insurance Company was defendant. In each of these actions the facts and the defences were the same and the judgments were the same in favor of the said plaintiff, and the defendants, respectively, obtained writs of error and *supersedeas* thereto. Opinion states the case.

*W. W. & B. T. Crump*, for plaintiff in error in first case.

*G. D. Gray* and *Hill & Jeffries*, for plaintiffs in error in the other cases.

*Rixey & Barbour* and *J. C. Gibson*, for defendant in error.

LACY, J., delivered the opinion of the court.

The first styled action is upon a policy of insurance, trespass on the case in *assumpsit* for $3,250 for a loss incurred by fire. The defence is that no such contract was made as that sued upon; fraud in the procurement of the fire by which the property was burned; no effort made to save the property by the plaintiff, and the efforts of others prevented by the false alarm of danger made by the plaintiff; increase of risk after the insurance by keeping gunpowder, and the building used for manufacturing purposes; the loss claimed greater than the interest of the assured; false estimates of the value of the property furnished by the assured; misrepresentations and concealment of material facts in reference to the value of the property and the interest of the assured, made in the application for insurance; no sufficient proofs furnished, as required by the policy; no proofs of loss furnished by the plaintiff; change of interest, title, possession, and occupancy, after the policy issued, without the consent of the defendant indorsed on the policy, as re-

quired thereby; want of interest of the plaintiff in the property; other contracts of insurance procured without the consent of the company endorsed on the policy, as required thereby; misrepresentation in the proofs of loss in reference to the value of, title to, interest in, and ownership of the property destroyed, and as to the origin of the fire; running the manufacturing department at night, without the consent of the defendant endorsed on the policy; plaintiff not sole, absolute, and unconditional owner of the property insured, and destroyed by fire; failure of the plaintiff to comply with each and every one of the conditions precedent set forth in the policy of insurance sued on.

The policy was issued to W. A. Thomas & Co., a mercantile firm doing a tinning business in the town of Culpeper. This firm was composed of the said W. A. Thomas and one Mrs. Ellen F. Stringfellow, a married woman, whose husband, George F. Stringfellow, was, by the agreement between the parties forming the co-partnership, to act for her as her agent under the contract, and render services in the business as occasion might require. The insurance company was represented by local general agents stationed at Culpeper. The insurance was procured by these agents, who were familiar with the business, and well acquainted with the parties concerned. The business insured was a general tin, tinning, and stove business. The fire occurred late in the night. The defendant in error, W. A. Thomas, surviving partner, resided in the town, and was at work late at night in the place of business, and had shut up and retired to bed at his home in the town some hours before the fire occurred. When called up, he went to the store, where a large crowd was already assembled, and attempted to enter the front door, but retired before the smoke and fire. Subsequently he opened a window, and went in and got his books out of the safe, and saved them, it is said, at a great risk to himself. A cry of gunpowder being raised (it does not appear ·by whom), parties whose property adjoined procured axes and broke into the hardware department, and

brought the gunpowder out.   An effort is made, on the cross-examination of Thomas, to indicate the grounds of suspicion of criminal conduct on his part in the fraudulent procurement of the fire.   He was asked if he did not say " all right" when first informed of the fire; if he did not do an unusual and suspicious thing in being down there until 9 or 10 o'clock that night, with his furnaces running; and if that night, or that week at least, was not the beginning of such night work; and if two of his insurance policies did not expire next day at 12 M.; and if he was not greatly pressed just then to meet money demands pressing in on him in the shape of drafts, orders, and demands for liquidation of unpaid bills.   But these things were not established to the satisfaction of the court and jury, and upon the demurrer to the evidence the jury fixed the recovery subject to the judgment of the court, which was rendered for the plaintiff.

The chief defence, and most relied on, is that there was a " change of interest, title, possession, and occupancy, after the policy issued, without the consent of the defendant indorsed on the policy."   It appears that the firm of W. A. Thomas & Co. had continued to run the business as before until the fire; and it is not contended that there was any sale or transfer making any change in the ownership or in the parties in possession.   But the circumstance to which we are pointed to sustain this contention is that Mrs. Stringfellow died before the fire occurred, in the month of March of that year; and by will left her property for life to Mr. George F. Stringfellow, her husband, charged with the support of her infant child, and, after his death, to the child, providing, however, that he should continue the business as heretofore, as he might deem best; and he had continued to do this, as we have said, and W. A. Thomas & Co. continued the business as it was before, except additional investments in stock and merchandise, as their business views suggested; and there was no actual change in the personel of the force at work and controlling the business, in

possession and occupancy. The change in title caused by the death of Mrs. Stringfellow is what is relied on under this assignment to defeat this recovery; and to decide this we must construe the language of the policy under which this claim is set up, which is as follows: "If there be any change in the title or interest of the assured in or to the property in any way, or by sale or mortgage or other incumbrances, or if the title or interest of the assured is less than an entire, absolute, unconditional, unincumbered, fee simple ownership, unless, in last event, notice *thereof before loss or damage be given in writing by the assured to the company*, and it accept the same in writing herein." The policy in question must be construed according to its terms, and the evident intent of the parties is to be gathered from the language used; and the court cannot extend the risk beyond what is fairly within the terms of the policy. New conditions cannot be added by the court, but the rights of the parties must stand upon the contract as made. It is to be construed as a whole; not literally nor severely as to either side, but accurately, so as to carry into effect the real purpose and understanding of the parties. But all conditions involving forfeitures, as well as all exemptions, will be construed strictly, and most favorably to the assured—that is, most strongly against the party for whose benefit they are inserted—that is, that such contracts are to be construed as other contracts are construed, and that the exceptions contained in them as provisos shall be construed most strongly against the parties for whose benefit they are inserted. Its language is to receive a reasonable interpretation. Its intent and substance, as derived from the language used, should be regarded. Full legal effect should always be given to it, for the purpose of guarding the company against fraud and imposture. Beyond this it has been said we would be sacrificing substance to form—following words rather than ideas. And, in a case where it can be fairly claimed that two constructions can be placed upon the language used in the policy, it is now well settled that the one

is to be adopted which is most favorable to the insured; and in case of doubt as to the meaning of terms employed by an insurance company they are to be construed most strongly against the insurer.

These general principles, the result of the decided cases, and to be found in the text-books on the subject, being borne in mind, we will briefly consider the clause in question. The insertion is intended to protect the company against unknown risks. The contract of insurance is like other contracts made between known and contracting parties. The contract being one of hazard, and largely of trust and confidence, the person contracted with is deemed of such vital importance that it is expressly provided that the same shall not be assigned without the consent of the company. The person, and all that is involved in the person, his estimated character and known habits, may affect the risk in no small degree, and a stranger is not to be brought in without the consent of all parties. The interest must remain entire and absolute, or the safeguards arising from the ownership and uninsured interest may be broken down. In this case there has been no sale or transfer, or change in the persons in possession. Mrs. Stringfellow, one of the partners, died, and the business, by operation of law, passed to one surviving partner for the settlement of the business of the concern. By the testator's direction, and the consent of all parties interested in the business, the affairs went on, buying and selling as before. It is conceded that if the fire had occurred the next day after the death of the deceased partner, it would not have impaired the policy; and the continuance of the business for several months does not alter the question, as there was no objection, but a positive approval, on the part of the company, by a renewal under these precise circumstances. We are not without the aid of judicial construction and decision upon this question. In the late case of *Va. F. & M. Insurance Co.* v. *Vaughan*, 88 Va., 835, the question arose where one partner sold out to the other; and it was held, by the weight

of authority and the better reason, not to violate the provision as to change of title or possession, and not to avoid the policy. See that case and the authorities cited, where this clause was held to mean the transfer by the insured to third persons.  If; after the insurance is obtained and the risk assumed, the title to the property insured is transferred or changed without the permission of the insurer, it will avoid the policy.  "But if the change be a mere succession of the widow and heirs of the assured, who resided in the house at the time of his death, this is not such a change or transfer of the title as avoids the policy."  *Ga. H. Insurance Co.* v. *Kinnier's adm'x*, 28 Gratt., 99.

This is the main question in the case, but there are others which appear to be relied on also.  It is claimed that the company insured a tin shop, and the policy contained a provision against a manufacturing establishment, and that the making of tin cans and soldering strips of tin for roofing to be placed upon houses was a violation of the policies.  This would be to stick in the bark, indeed.  The obvious daily work of the tin shop, patent to everyday observation, was the business insured. To hold that the work of this sort violated the clause in question would not be to effectuate the contract of parties, but to circumvent it.  There are other questions still which have been mentioned, which appear to have been rightly decided by the trial court.  The question of fraud and deceitful conduct was left to the jury, and by them decided, and we perceive no evidence in the record to sustain these charges.  Upon the whole case, we are of opinion to affirm the judgment complained of, rendered herein by the circuit court of Culpeper county.

In the other four cases the property insured was the same as that in the first, the facts were the same, the defences the same, and the results the same, judgments being for the plaintiff in each case, which judgments are all affirmed.

JUDGMENTS AFFIRMED.