# Richmond.

## VA. FIRE AND MARINE INSURANCE CO. V. VAUGHAN.

### March 10th, 1892.

1. INSURANCE POLICIES—*Transfer of interest.*—Where one partner of insured firm transfers his interest in insured property to the other partner, recovery for loss thereof is not barred by reason of clause in policy forbidding any change in the title or interest of insured.

2. IDEM—*Material alteration of invoices—Case at bar.*—False answer as to any fact material to the enquiry into amount of loss, wilfully made to deceive insurer, is fraudulent and within clause providing that policy shall be invalid for any false swearing, fraud, or attempt at fraud, by insured in support of his claim for loss or in the proofs of loss. Here insurer, having proved that the invoices had been materially and fraudulently altered;

HELD:

No recovery can be had by insured.

3. PRACTICE AT LAW—*Service—Commencement of suit.*—Service of summons on defendant's agent having been made within ten days of return day, and suit having been remanded to rules to be properly matured, and an *alias* summons having been issued and duly served;

HELD:

Commencement of suit was the issuance of the original summons, and saved the suit from being barred by the limitation clause in the policy.

Error to judgment of the circuit court of Southampton county, rendered January 15th 1891, in an action of trespass on the case in *assumpsit*, wherein C. C. Vaughan was plaintiff, and the Virginia Fire and Marine Insurance Company was defendant, the case being as follows:

On the 27th of September, 1888, D. Lassiter and M. L. Beale, under the firm-name of D. Lassiter & Co., commenced

business as grocers and liquor merchants at the town of Franklin, in Southampton county. On the 27th of the following month the defendant company, the plaintiff in error here, issued a policy of insurance for $1,500, insuring the firm against loss or damage by fire on their stock of goods. On the 12th of November following Beale withdrew from the firm, and, without the consent of the company, transferred his interest therein to Lassiter, and on the 5th of the following December he assigned his interest in the policy of insurance to Lassiter. The next day the goods were destroyed by fire. After loss Lassiter assigned his interest in the policy to Vaughan, the plaintiff in the court below, for $1,100.

The policy, among other things, provides that the same shall be avoided by "any change in the title or interest of the assured in or to said property without the consent of the company." It also contains the following provision:

"That this company shall not be liable under this policy * * * if there be fraud or false representations in the procurement thereof by the assured, or any false swearing or fraud, or attempt at fraud, before or after loss or damage, by him in support of his claim for loss, or in the proofs of loss."

The original summons to commence the action was sued out on the 29th of March, 1889. It was made returnable to rules on the first Monday in the following April, and was served on an agent of the defendant company the next day. This, of course, was less than ten days before the return day, and, therefore, not in conformity with the requisitions of the statute in such cases. Code, § 3227. Accordingly the defendant moved the court, at a subsequent term, to quash the writ and return, and to dismiss the case from the docket. The circuit court overruled the motion, but did remand the case to rules, to be "properly matured," to which ruling the defendant excepted.

An *alias* summons was afterwards issued, which was duly served and returned.

The defendant pleaded the general issue, and also a number of special pleas, setting up, in the latter, various instances of false swearing and attempts at fraud on the part of Lassiter in furnishing, on oath, preliminary proofs of loss. It was charged in several of the pleas that invoices of goods, purporting to be invoices of goods destroyed in the fire, were so furnished, but that the goods, in fact, were never in the store of D. Lassiter & Co.; that they belonged to other parties, and were not covered by the policy sued on, as the said Lassiter well knew. In other pleas six instances were charged of invoices so furnished that had been fraudulently *altered* by a change of dates, so as to bring them down to September 27th, 1888, the date at which D. Lassiter & Co. commenced business in Franklin.

The jury found for the plaintiff the amount of the policy, whereupon the defendant company moved for a new trial on the ground that the verdict was contrary to the law and the evidence. But the court overruled the motion and entered judgment on the verdict, to which ruling the defendant excepted.

*W. W. & B. T. Crump*, for plaintiff in error.

*B. W. Nash* and *J. B. Prince*, for defendant in error.

LEWIS, P. (after stating the case), delivered the opinion of the court.

1. There is no error in the order of the circuit court remanding the case to rules to be properly matured. The defect was not in the writ itself, but in the service and return, and that was no ground for quashing the writ. The recent case of *R. & D. R. R. Co.* v. *Rudd*, *ante*, p. 648, is a sufficient authority upon this point.

2. This also disposes of the question whether the action was commenced within the time stipulated for in the policy; that

is, " within six months next succeeding the date of the fire or damage." The commencement of the action was the issuance, not of the *alias*, but of the original summons, and that was within the stipulated period.

3. The next question relates to the action of the circuit court in instructing the jury, at the instance of the plaintiff, that the right of the latter to recover on the policy was not affected by the transfer by Beale of his interest in the co-partnership to his partner, Lassiter, notwithstanding the provision in the policy prohibiting "any change in the title or interest of the assured" in the property, without the consent of the insurer.

There is much diversity of judicial opinion upon the question whether a sale by one partner to another, under such circumstances, avoids the policy; but the weight of authority and the better reason, we think, is in favor of the view that it does not. *Wilson* v. *Gennessee Ins. Co.*, 16 Barbour 511 ; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405 ; *Powers* v. *Guardian Ins. Co.*, 136 Mass. 108 ; *Burnett* v. *Eufaula Ins. Co.*, 46 Ala. 11 ; *Dennoni* v. *Home Ins. Co.*, 26 La. An. 69 ; *Pierce* v. *Nashua Fire Ins. Co.*, 50 N. H. 297 ; *West* v. *Citizens' Ins. Co.*, 27 Ohio St. 1 ; *Cowan* v. *Iowa Ins. Co.*, 40 Iowa 551 ; *Lockwood* v. *Middlesex Assur. Co.*, 47 Conn. 553 ; *Texas Ins. Co.* v. *Cohen*, 40 Tex. 406 ; *N. O. Ins. Ass.* v. *Holberg*, 64 Miss. 51.

The object of such a provision is to protect the insurers against the risk of the introduction of a stranger to the contract, perhaps not in any way known to them, or, if known, not deemed worthy of their confidence. But this reason cannot apply where there is simply a transfer of interest by one partner to another, the interest of each being *per my et per tout*.

It is suggested in the present case, as it has been in other cases, that the provision in the policy may have been designed to secure the continuance in the firm of the only member in whom the insurers reposed confidence. But to this we answer in the language of the New York Court of Appeals, in the well-considered case of *Hoffman* v. *Ætna Ins. Co.*, *supra*, where,

in answer to a similar suggestion, it was said : " The only evidence of the confidence of the insurers in either of the assured is the fact that the company contracted with all ; and the theory is rather fanciful than sound that the former may have intended to conclude a bargain with rogues, on the faith of a proviso that an honest man should be kept in the firm to watch them. Certainly nothing appears in the present case to indicate that all the assured were not equally worthy of confidence; and it is not to be presumed that, in any case, underwriters would deliberately insure those whose integrity they had reason to distrust."

Such a construction is, no doubt, in accordance with the intention of the parties in the present case, when the contract was made, and it is a settled rule of construction, as was held in the case just mentioned, that the words of a contract are not to be taken in their broadest import, when they are equally appropriate in a sense limited to the object the parties had in view. So, where the language of a policy of insurance may be understood in more senses than one, it is to be interpreted in the sense which is most favorable to the insured. *Thompson* v. *Phœnix Ins. Co.*, 136 U. S. 287, 297.

The circuit court, therefore, rightly held that when the parties in the present case contracted that " *any* change in the title or interest of the assured " in the goods, without the consent of the insurers, would avoid the policy, they meant a transfer by the assured to third persons.

If such a prohibition forbids a sale by one partner to another, because it is a change of interest, then the bankruptcy of one, when a bankrupt law is in existence, would avoid the policy, and so, also, would the death of a partner, for in either case there would be a change of interest.

In *Burnett* v. *Eufaula Ins. Co.*, 46 Ala., *supra*, where the language of the policy was, that " if the said property shall be sold or conveyed, *or the interest of the parties therein changed,*" then the policy to be void, it was held that a sale by one part-

ner to his co-partners was not within the prohibition. " Inasmuch," said the court, " as the words of this restriction cannot be used in their enlarged sense, and their import is doubtful, their construction must incline against those for whose benefit the restriction was imposed. The interest of each partner in the goods was *per my et per tout.* The confidence reposed in them was testified only by the issue of the policy, and consequently was equal in each."

In some of the cases a distinction is drawn between a provision in policy declaring that the policy shall be void " if the property is sold and conveyed," and a provision like the one in the present case, against " any change in the title or interest of the assured." Ordinarily, however, the intention in either case would seem to be the same; that is, to guard the insurers against the risk of a transfer of the property from those contracted with to other parties with whom they have not contracted ; and a sale by one partner to another is not such a transfer.

In the recent case of *N. O. Ins. Asso.* v. *Holberg,* 64 Miss. 51, it was held that a sale by one partner of his interest in the property to another partner, did not avoid the policy sued on in that case, the language of which was that " if any change takes place in the title or possession of the property," then this policy to be .void ; and the court in its opinion used this language :

" It cannot be believed that such was the intention of the parties. If any such result was contemplated, it should have been clearly expressed in the policy. It cannot be fairly implied from the language employed or from the nature and object of the contract. A better view, not inconsistent with the language and purposes of the contract, is to regard the provision as inserted in the policy for the protection of the insurer against the risk of having strangers, without its consent, substituted in the place of the original parties, and to construe the provision as intended, not to interdict all sales, but only transfers to persons not insured."

4. The only remaining question is as to the refusal of the circuit court to grant a new trial; and in this, we think, there was error.

The principal defense was false swearing and attempt at fraud, on the part of Lassiter, the assignor of the plaintiff, in furnishing preliminary proofs of loss. The total value of the goods thus claimed to have been destroyed, as sworn to by Lassiter, was $3,028.51, for which duplicate invoices were furnished, the originals, as he stated, having been burned.

It is certified, however, as having been *proved* by the defendant that of these invoices four were for goods, of the aggregate value of nearly $600, which constituted no part of the stock insured, but were sold to M. L. Beale, to whom they were shipped to Courtland, where he was doing a mercantile business. The invoices, however, were made out in the name of M. L. Beale & Co., which was the style of the firm at Franklin before it was changed to D. Lassiter & Co. And it was also proved by the defendant that several of these duplicate invoices had been *altered*, so as to purport to be for goods purchased after the assured began business, whereas, in fact, they had been purchased sometime before, as alleged in the special pleas.

It is true the certificate also states that Lassiter was not a book-keeper, or an expert penman, and that he could not have made the alterations. But why he could not, is not explained any further than that he was not a book-keeper nor an expert penman, which would hardly seem to be a very satisfactory explanation. But be that as it may, it is further certified that the facts proved by the defendant in regard to the alleged fraudulent invoices were not in any other particular *denied or explained*, and that Lassiter himself was not examined as a witness, nor is any reason given why he was not.

Under these circumstances the jury were not warranted in finding as they did. It was undoubtedly incumbent on the plaintiff, to entitle him to recover, to remove the suspicion which the facts proved in connection with the invoices in question

justly excite; for nothing is better settled than that the assured must observe, in dealing with the insurer, the utmost good faith, without which there can be no recovery. *Moore* v. *Va. Fire and Marine Ins. Co.*, 28 Gratt. 508, 523.

The plaintiff, however, contends that fraud, or attempt at fraud, has not been established in the present case—first, because there was no motive on Lassiter's part to practice a fraud; and secondly, because in the result the defendant has not been prejudiced. It is said the evidence before the jury as to the value of the goods destroyed, exclusive of the alleged fraudulent items, shows that it was not less than $2,000, and that the plaintiff could in no case recover more than $1,500, the amount of the policy, for which sum the verdict was rendered.

It is true the certificate states " that the goods destroyed by the fire, estimated by several witnesses, who took no inventory, and did not measure or weigh any of the goods, but saw them frequently before they were destroyed, were fully worth $2,000." But is it true that Lassiter had no motive to exaggerate the loss sustained? That he did overstate it is conceded.

It appears that on the 12th of November, 1888, when Beale withdrew from the firm, an inventory of the stock was taken, and that its value was then only $2,152.62. The cost of the subsequent purchases did not exceed $200, whilst the sales between that time and the 6th of December, when the fire occurred, must have reduced the stock considerably. Yet, according to the preliminary proofs of loss, it was worth nearly $1,000 more when the fire occurred than when the inventory was taken, twenty-four days before.

Now, to entitle the assured to demand payment of the full amount of the policy, it was necessary to show an actual loss of not less than $2,000, because the policy provides that the liability of the company shall in no case exceed three-fourths of the loss; and the greater the loss over and above the sum of $2,000 that could be shown, the less likelihood was there of a contest by the company, or any very close scrutiny or inves-

tigation into the matter. Might not Lassiter, then, have had a fraudulent motive in furnishing, as he did, proofs of the loss of goods, which, in fact, were not covered by the policy?

But however that may be, the undisputed facts are that he swore to a loss in excess of the actual loss, and furnished false vouchers, for which no explanation has been offered. We must, therefore, infer that his sworn statements *were known to him to be false,* and being upon a material matter, the law presumes that they were made with intent to deceive.

An authority in point is *Claflin* v. *Commonwealth Ins. Co.,* 110 U. S. 81. In that case the policy sued on, like the policy in the present case, contained a provision, to the effect that in case of loss the assured should submit to an examination under oath by an agent of the insurer, and that all fraud or attempt at fraud, by false swearing or otherwise, should avoid the policy. The assured, after loss, submitted to such examination, and gave false answers as to the manner in which he paid for the goods. The answers, however, were made, not for the purpose of deceiving or defrauding the insurer, but for the purpose of showing the affiant consistent with a previous statement he had made on the same subject to a commercial agency, with a view of enhancing his credit in other cities. Nor was it claimed that his actual loss was not correctly stated.

The plaintiff, therefore, contended that the answers though false, constituted no bar to a recovery. But the circuit court—Mr. Justice Miller presiding—held otherwise, and charged the jury that if the answers were intended to influence the action of the insurer, and were false, then there was a false swearing, within the meaning of the policy, which avoided it, although there may have been no intention to defraud.

In affirming this ruling, the Supreme Court said:

" A false answer as to any matter of fact material to the inquiry, knowingly and wilfully made, with intent to deceive the insurer, would be fraudulent. If it accomplished its result,

it would be a fraud effected; if it failed, it would be a fraud attempted. And if the matter were material and the statement false, to the knowledge of the party making it, and wilfully made, *the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts.*"

It is, moreover, a circumstance not without significance in in the present case that the day after the proofs of loss were furnished, Lassiter assigned the policy to the plaintiff for eleven hundred dollars, or four hundred dollars less than the full amount of the policy. Why so large a discount was made, if the goods actually destroyed were supposed to have been worth two thousand dollars or upwards, does not appear. Indeed, it is quite remarkable that in a case calling for so much explanation there should have been so little.

In the argument a number of authorities were cited by the learned counsel for the appellee to show that to constitute fraud the rights of others must have been prejudicially affected; and this, as a general proposition, is not disputed. Thus a suit, the *gravamen* of which is fraud, sa, for example, an action for deceit, cannot be maintained unless the plaintiff has been injured. But the present is not such a case. This is not an action by the insurer against the assured for fraudulent misrepresentations, but an action against the insurer to recover on a policy, which expressly stipulates that any false swearing, or attempt at fraud, shall avoid it; and if this provision has been violated, as charged in the pleas, it is immaterial whether the insurer has been prejudiced or not. The provision was inserted for the protection of the company, and both the law and public policy require that it be respected and enforced.

Nor is the position well taken that the judgment must be affirmed, because the certificate does not affirmatively state that *all* the facts proven at the trial are certified. The fair inference from the record is that all the facts are certified. But be that as it may, enough appears to require a reversal of the

judgment.    It is certified, as we have seen, that no expla-
nation was offered touching the false statements made under
oath in furnishing the preliminary proofs of loss, and in the
absence of such explanation it follows, as a legal conclusion,
that there can be no recovery.    In such a case, as was decided
in *Moore* v. *Va. Fire and Marine Ins. Co.*, 28 Gratt. 508, the
maxim *falsus in uno, falsus in omnibus* applies.

The judgment will, therefore, be reversed, and the case
remanded for a new trial.

JUDGMENT REVERSED.