### GLOBE & RUTGERS FIRE INS. CO. v. STALLARD et al.

### No. 3511.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

Donald T. Stant, of Bristol, Va., for appellant.

Thomas L. Hutton, of Abingdon, Va., and J. P. Buchanan, of Marion, Va. (Hutton & Hutton and E. H. Moore, all of Abingdon, Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment on a fire insurance policy. The insured was the plaintiff Stallard, his coplaintiffs, the Gilpins, being mortgagees of the insured property protected under the policy by an ordinary loss payable clause. The company pleaded two defenses: (1) Failure on the part of insured to file proofs of loss within sixty days as required by the terms of the policy, and (2) false swearing in the proofs of loss as finally filed. The exceptions cover the refusal to direct a verdict in favor of the company on the first of these defenses, and failure to charge the jury as requested with respect to the second. Although the policy was for $4,000, the court limited the recovery to $2,446.12 on the basis of a settlement made with another company which had issued a policy on the same property; and from the judgment rendered the company has appealed.

The policy covered a building used as a storehouse and hotel, on which there was another policy, written by the Federal Hardware & Implements Mutual Insurance Company, in the sum of $2,200. Both policies contained the usual three-fourths value and pro rata liability clauses. Fire which destroyed the building occurred August 27, 1930; and shortly thereafter insured made a settlement with an adjuster representing the Federal Company as to the amount due under the policy which it had issued. As preliminary to this settlement, an itemized estimate of the loss sustained in the destruction of the building was agreed on, which showed replacement cost at $6,481.17. From this was deducted agreed depreciation at 22 per cent., or $1,425, leaving an agreed sound value and loss of $5,055.32. On this amount, the total payable under the three-fourths value clause was $3,791.48, of which $1,345.36 was payable under the Federal policy and $2,446.12 under the policy of defendant.

Shortly after this settlement with the Federal, and within sixty days of the fire, insured attempted to reach a settlement with the adjuster of the defendant, who had been on the ground and adjusted the loss on a policy held by another company covering a stock of goods contained in the building. Defendant had issued two policies, the one here in suit covering the building, and another, in the sum of $3,000, covering the household and kitchen furniture therein contained. The adjuster was furnished by the insured with a copy of the estimate upon which the adjustment with the Federal had been made, and also with a list of the household and kitchen furniture. He made objection to items contained in the list last mentioned, but no objection to the estimate on the building. When he and insured could not agree on the furniture loss, insured asked about the building loss, and was told that "that would take care of itself." The adjuster testified that he was "satisfied as to the building, if the company was liable"; and, according to the testimony of the insured, he refused to settle the building loss merely because an agreement could not be reached as to the loss on the furniture. As insured was leaving the adjuster's office, the latter stated that he expected insured to comply with his policies, but said nothing to indicate that the statement furnished as to the building loss was not a sufficient compliance so far as that loss was concerned.

Some time after this disagreement, insured employed one O'Dell to assist him in collecting from the defendant on both policies; and O'Dell prepared an itemized estimate showing the building loss to be $12,508.16. On October 23d, insured wrote the company that he had been unable to get an adjustment on his policies; that he wished to appraise the loss under the appraisal clause; and that he had selected O'Dell to represent him in the appraisal. On October 25th the company answered this letter, saying that there had been no disagreement as to loss and that no proof of loss or sworn statement had been filed pursuant to the provision of the policies. While this letter referred to both policies, only the controversy with respect to the furniture loss was specifically mentioned

and nothing was said directly with reference to the building loss, which insured had previously been told by the adjuster would take care of itself. On October 30th, insured again wrote the company, this time demanding an appraisal and inclosing a sworn itemized list of the furniture loss and an estimate signed by O'Dell of the building loss. On November 15th, the company replied, denying that insured had complied with the conditions of the policies or that there had been any disagreement as to sound value or any proofs of loss filed so far as it knew. Again there was no specific reference to the building loss or to the estimate furnished the adjuster upon which settlement had been made with the Federal Company.

On February 21, 1931, insured swore to proof of loss prepared by O'Dell and mailed it to the company. In this proof, the cash value of the property at the time of fire was stated to be $12,508.16; and attached thereto, as an exhibit, was the itemized statement of loss prepared by O'Dell. At the trial one witness for plaintiff testified that the building destroyed could be replaced with a new building for from $6,500 to $7,000. Another witness fixed the cost of replacement at from $7,000 to $8,000. A third fixed it at $7,930. It was undisputed that the building, with the furniture in it, and with the land upon which it was situate, had been purchased by insured for a price of $10,000, of which only $1,400 had been paid in cash. The provision of the policy with relation to false swearing is as follows:

"Fraud, misrepresentation, etc. This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

We think that the judge below was unquestionably right in refusing to direct a verdict for defendant on the ground of failure to furnish proofs of loss within the time required by the policy; for it clearly appeared that a detailed statement of loss had been furnished defendant's adjuster and that the facts were such as to make the question as to whether further proofs were waived a question for the jury to decide. The adjuster had been on the ground and investigated the loss; he presumably knew all about the ownership of the property and the lien upon it; he was furnished with an itemized statement of the loss upon which settlement with the other company had been made, to which he made no objection; he was thoroughly satisfied with the loss as so determined; and, when he insisted on negotiating with respect to the amount of the furniture loss and stated that the building loss would take care of itself, his language and conduct might well have been interpreted as meaning that the statements furnished with respect to the building loss were sufficient and that no further proofs with regard thereto were required. Neither the statement of the adjuster as insured was leaving his office, nor the general statements contained in the subsequent letters of the company were sufficient, we think, to absolutely negative the assurance given the insured with respect to the building loss; for he had been given to understand that the adjustment of that loss was refused, not because the proofs which he had furnished were not sufficient, but because he would not agree on the furniture loss. Under these circumstances, the question as to whether there was waiver of further proofs was one for the jury. Hartford Fire Ins. Co. v. Kiser (C. C. A. 4th) 64 F.(2d) 288, 290. The law on the subject is well settled. We had occasion to advert to it in the recent case of Niagara Fire Insurance Co. v. Raleigh Hardware Co. (C. C. A. 4th) 62 F.(2d) 705, 707, where we said:

"And we agree, also, that the defendants would be held to have waived the condition requiring that proofs of loss be furnished within sixty days, if failure to comply with such condition resulted in a forfeiture under the laws of West Virginia. They entered into negotiations with plaintiff looking to an adjustment of the loss. In the course of the negotiations they were furnished by plaintiff with plans and specifications of the burned building and other information usually contained in proofs of loss. By their investigation of the fire and through their dealings with plaintiff, they secured all the information which the proofs were designed to furnish; and the negotiations for an adjustment were, in the absence of notice to the contrary, sufficient ground for plaintiff's assuming that no further or more formal proofs of loss were necessary. Plaintiff's delay in furnishing the proofs of loss was in a very real sense, therefore, the result of the conduct of the defendants, and it would be unconscionable to allow defendants to take advantage of the delay. If the provision of the policy requiring proofs of loss within sixty days were a condition of recovery, defendants would be held to have waived it by their conduct, or, what is the same thing, would be es-

topped to assert it. Concordia Ins. Co. v. School District, 282 U. S. 545, 550, 51 S. Ct. 275, 75 L. Ed. 528; Id. (C. C. A. 10th) 40 F.(2d) 379; Firemen's Ins. Co. v. Brooks (C. C. A. 6th) 32 F.(2d) 451, 65 A. L. R. 909; Continental Ins. Co. v. Fortner (C. C. A. 6th) 25 F.(2d) 398; Lusk v. American Cent. Ins. Co., 80 W. Va. 39, 91 S. E. 1078; American Ins. Co. v. Dannehower, 89 Ark. 111, 115 S. W. 950; Helvetia Swiss F. Ins. Co. v. Edward P. Allis Co., 11 Colo. App. 264, 53 P. 242; Teasdale v. City of New York Ins. Co., 163 Iowa, 596, 145 N. W. 284, Ann. Cas. 1916A, 591 and note; 26 C. J. 403; 14 R. C. L. 1348."

█ But we think that there was reversible error in refusing to charge the jury in accordance with defendant's request on the defense of false swearing. The provision of the policy with regard thereto has been quoted. One of the defendant's exceptions is that the court refused to give the jury the following instruction:

"The defendant insurance company is entitled to demand of an insured the utmost good faith in all dealings, including the furnishing of sworn proofs of loss, and accordingly, if you believe from the evidence, and the circumstances shown by the evidence, that W. L. Stallard, in his sworn proof of loss to the defendant, knowingly and wilfully over-estimated or over-valued the cash value at the time of the fire of the buildings insured and destroyed, or the amount of loss and damage thereto, such acts on his part defeat the right of plaintiffs to recover, and you should find for the defendant, and this is true regardless of whether he furnished such proof of loss within or after the period of sixty days after the fire."

█ This was a substantially correct statement of the law. The policy is avoided not only for fraud, but also for false swearing by the insured touching any matter relating to the insurance or the subject thereof, "whether before or after a loss." If the condition were against fraud alone, the argument as to reliance by the company might be pertinent; but the condition against false swearing is broken when a false oath is knowingly and willfully made by the insured as to any matter material to the insurance or the subject thereof. It is said in some of the cases that same must be made with intent to deceive or defraud. 26 C. J. 383, 384; Fidelity-Phenix Ins. Co. v. Benedict Coal Corporation (C. C. A. 4th) 64 F.(2d) 347, 352; National Fire Ins. Co. v. Renier (C. C. A. 7th) 22 F.(2d) 671. But, as pointed out

by the Supreme Court of the United States in Claflin v. Ins. Co., 110 U. S. 81, 95, 97, 3 S. Ct. 507, 515, 28 L. Ed. 76, the intent to deceive and defraud is necessarily implied in the intentional and willful making of a false statement as to a material matter. In that case the court said:

"No one can be permitted to say, in respect to his own statements upon a material matter, that he did not expect to be believed; and if they are knowingly false and willfully made, the fact that they are material is proof of an attempted fraud, because their materiality, in the eye of the law, consists in their tendency to influence the conduct of the party who has an interest in them, and to whom they are addressed. 'Fraud,' said Mr. Justice Catron, in Lord v. Goddard, 13 How. 198 [14 L. Ed. 111], 'means an intention to deceive.' 'Where one,' said Shepley, C. J., in Hammatt v. Emerson, 27 Me. 308–326 [46 Am. Dec. 598], 'has made a false representation, knowing it to be false, the law infers that he did so with an intention to deceive.' 'If a person tells a falsehood, the natural and obvious consequence of which, if acted on, is injury to another, that is fraud in law.' Bosanquet, J., in Foster v. Charles, 7 Bing. 105; Polhill v. Walter, 3 Barn. & Ad. 114; Sleeper v. Ins. Co., 56 N. H. 401; Leach v. Republic F. Ins. Co., 58 N. H. 245. * * * In any view, there was a fraud attempted upon the insurers; and it is not lessened because the motive that induced it was something in addition to the possible injury to them that it might work. The supposition proceeds upon the very ground of the false statement of a material matter, knowingly and willfully made, with the intent to deceive the defendants in error; and it is no palliation of the fraud that Murphy did not mean thereby to prejudice them, but merely to promote his own personal interest in a matter not involved in the contract with them. By that contract the companies were entitled to know from him all the circumstances of his purchase of the property insured, including the amount of the price paid and in what manner payment was made; and false statements, willfully made under oath, intended to conceal the truth on these points, constituted an attempted fraud by false swearing which was a breach of the conditions of the policy, and constituted a bar to the recovery of the insurance."

And there can be no question but that, by the overwhelming weight of authority, knowing and intentional overvaluation in the sworn proofs of loss avoids the policy under the clause against false swearing. Cuetara Hermanos v. Royal Ex. Ins. Co. (C. C. A.

1st) 23 F.(2d) 270; National Fire Ins. Co. v. Renier (C. C. A. 7th) 22 F.(2d) 671; Columbian Ins. Co. v. Modern Laundry (C. C. A. 8th) 277 F. 355, 20 A. L. R. 1159; Oshkosh Packing & Provision Co. v. Mercantile Ins. Co. (C. C.) 31 F. 200; Mack & Co. v. Lancashire Ins. Co. (C. C.) 4 F. 59; Huchberger et al. v. Providence Washington Ins. Co., Fed. Cas. No. 6,823, affirmed 12 Wall. 164, 20 L. Ed. 364; Wiede v. Ins. Co. of North America, Fed. Cas. No. 17,617; 26 C. J. 382; notes in 20 A. L. R. 1168 and 56 A. L. R. 390; Cooley's Briefs on Insurance (2d Ed.), vol. 7, p. 5852. Of course, honest mistake will not avoid the policy; and to preclude recovery the overvaluation must be of a material character and must have been knowingly and intentionally made. And, ordinarily, where there is evidence from which intentional overvaluation may be inferred, the question whether it was intentional and with intent to deceive or defraud is a question for the jury. National Fire Ins. Co. v. Renier, supra; Wiede v. Ins. Co. of North America, supra. The rule applicable in such case was well stated by Judge Dillon in his charge to the jury in the Wiede Case as follows:

"The plaintiffs are not entitled to a verdict if they intentionally stated their loss under the conditions of the policies, that is, in the manner prescribed in the policies, greater than it was in reality, although you should be of the opinion that they had suffered some loss, for the reason that being guilty of willfully false statements, they cannot appeal successfully to a court of justice to aid them in obtaining the value of the property destroyed. But if these plaintiffs made out their proofs of loss from their best recollection, aided by such books and papers as escaped destruction by fire, and if they had no intention of stating such loss incorrectly or deceiving the defendants by such statements, then they can recover their pro rata loss, although you should be satisfied that they claimed more than the evidence, in your opinion, would warrant. Honest mistakes in regard to values and amounts of loss should not defeat a recovery. The law grants indulgence where the statements are innocently made, but if it was the purpose of the plaintiffs to deceive and mislead the defendants by their statements, in other words, commit a fraud, they can have no relief in a court of justice."

The evidence here as to false swearing was sufficiently strong to take the case to the jury on that issue. It appears that the insured filed proofs of loss with the company in which he swore that the value of the property destroyed was exceeding $12,000, although he had bought it with other property a short while before for only $10,000. None of his witnesses would value it at exceeding $8,000 and he had settled with another insurance company on the basis of a valuation of approximately $5,000. It is not correct to say that this overvaluation was immaterial; for the right to recover the full amount of the $4,000 policy was dependent upon showing a value of $8,266.66. And it is no defense to the false swearing, if false swearing it was, that further proofs of loss had been waived by the conduct of the adjuster; for the sworn statements were contained in proofs furnished in an attempt to collect under the policy. See Orenstein v. Star Ins. Co. (C. C. A. 4th) 10 F.(2d) 754, which is authority also for the proposition that the rights of the mortgagees under the loss payable clause are no greater than the rights of the insured. It should be said that the fact of the insured's having furnished the adjuster of defendant with a copy of the estimate upon which the settlement with the Federal Company had been made, showing the value of the property destroyed at approximately $5,000, tends strongly to negative any intent to deceive or defraud the company or to make any intentional overvaluation in the proofs of loss; and it may be, as contended by the insured, that the proofs of loss were executed in reliance upon O'Dell, in the belief that the values therein stated were correct, and without the knowledge and intent necessary to avoid the policy. But these were matters to be considered by the jury in passing upon the defense of false swearing, not matters which justified the court in withdrawing that defense from the jury's consideration.

The question of the right of the trial judge to limit the recovery on the basis of the settlement with the Federal is not before us, and we decide nothing with regard thereto; but we think it proper to call attention to the fact that it is not before us, lest our silence be construed as an approval of that limitation if the question should arise upon the further trial of the cause. It is difficult to see how the rights of the plaintiff under the policy in suit could be limited by a settlement made with another company, as the defendant was not a party to that settlement, and same was not made in its behalf or adopted by it. It is well settled that an insured is not estopped by the valuation set forth in his proofs of loss. Fidelity-Phenix Fire Ins. Co. v. Benedict Coal Corp. (C. C. A. 4th) 64 F.(2d) 347, 354; First Nat. Bank v. Glens Falls Ins. Co. (C. C. A. 4th) 27 F.(2d) 64,

70. And nothing is added to the effect of an estimate furnished in lieu of proofs of loss by reason of the fact that it has served as the basis of settlement with another company.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded for a new trial.

Reversed.