ALMA STATE SAVINGS BANK *v.* SPRINGFIELD FIRE &
MARINE INS. CO.

1. INSURANCE—FALSE SWEARING.

While clause voiding policy in case of false swearing by insured
in proof of loss is effective, in order to avoid the policy such
false swearing must have been done with an actual intent to
defraud insurer.

2. SAME—ISSUE OF FACT—FALSE SWEARING—WAIVER—PROOF OF
LOSS.

Issue of fact as to whether false swearing by insured in his proof
of loss was done with intent to defraud insurer would have
been raised had insurer rested upon proof of loss prepared by
insured and not made a subsequent adjustment in which such
proof of loss was disregarded and waiver of fraud effected.

3. SAME—AUTHORITY—ADJUSTER.

Adjuster may bind insurer as to the amount of the loss where
insured knows of no limitations as to adjuster's authority.

4. SAME—CONTRACTS OF ADJUSTMENT.

Contract ascertaining amount of loss according to terms of fire
insurance policy arose when proof of loss prepared by insurer
was signed by adjuster and insured and sent to insurer.

5. SAME—JURY QUESTION—CHATTEL MORTGAGES.

Jury question was not raised as to effect of provision of fire in-
surance policy excluding coverage on chattel mortgaged prop-
erty unless otherwise provided for in writing, where it is un-
disputed that chattel mortgage was released before fire loss
occurred.

Appeal from Gratiot; Searl (Kelly S.), J.   Sub-
mitted June 12, 1934.   (Docket No. 101, Calendar
No. 37,730.)   Decided October 1, 1934.   Rehearing
denied December 11, 1934.

Action by Alma State Savings Bank against
Springfield Fire & Marine Insurance Company, a

Massachusetts corporation, for sums allegedly due under a fire insurance policy. Directed verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*William A. Bahlke, Charles H. Goggin,* and *Smith, Hunter & Spaulding,* for plaintiff.

*Chester P. O'Hara* (*Stanley W. Greene,* of counsel), for defendant.

Fead, J. Plaintiff had directed verdict in action on a fire insurance policy.

The policy, dated April 28, 1931, in the sum of $5,000, to Frank L. Napieralski, covered machinery, equipment, tools, printed matter, office furniture, fixtures and supplies in his baking plant at Alma. The fire occurred March 6, 1932.

Two days after issuance of the policy, assured executed a chattel mortgage on the insured property and other chattels, to plaintiff to secure a loan. August 31, 1931, plaintiff released the insured property and took a lien on the policy. In a few days after the fire assured assigned to plaintiff, as security, his claim under the policy. In all subsequent negotiations plaintiff was recognized by defendant as a party in interest. Before suit an unconditional assignment to plaintiff was made.

Defendant and 11 other companies carrying insurance on the property damaged sent experienced adjusters to the scene about March 31, 1932. The adjusters examined the premises. A week later, and again a week later, they made further and complete examinations, with the aid of lists prepared by the assured and substantially identical with the schedule in his proof of loss afterwards filed. On

each occasion they consulted assured and officers of plaintiff. At the last visit, and after making full examination, the adjusters consulted together and finally made an offer of $50,000 in settlement, the amount including $20,000 for machinery and equipment. Plaintiff and assured countered with an offer to take $65,000. No agreement was made.

About April 30th, and to avoid default, there having been no settlement, proofs of loss were prepared showing $40,800 insurance on the property covered by defendant's policy and claiming cash value of the property of about $41,000 and loss of $38,700. In the schedules assured exaggerated the cost to him of some of the machinery. A jury would have been justified in holding he had actual intent to defraud the insurance company in making overvaluations.

Mr. Mapes, cashier of plaintiff, made personal delivery of some of the proofs of loss in New York. On returning through Detroit he called on defendant's adjuster and, after some negotiations and several offers, they agreed upon the loss for machinery and equipment at $25,250, subject to approval by plaintiff and assured. Mapes returned home, consulted the interested parties and notified the adjuster that the offer was satisfactory. The adjuster prepared proofs of loss dated May 19th, called "supplemental compromise," and giving the loss and damage "in compromise" as $25,250. The proofs of loss were executed, returned to the adjuster, signed by it, forwarded to defendant and received.

At the expiration of the 30 days for payment of the loss, plaintiff, by letter and telegram, attempted collection or declaration by defendant of its position. Defendant made no specific defenses but expressed unwillingness to pay without further investigation.

In October its general agent, who had become suspicious of the cause of the fire in May, made further investigation and, in conversation with plaintiff's officers, informed them that, while he would neither admit nor deny liability, the company was inclined to the latter. After waiting some months, this suit was begun.

The court held that the compromise agreement was an "ascertainment" of the loss or damage "by agreement between the insured and this company, expressed in writing," within the meaning of the policy and could not be attacked except for fraud or mistake; that defendant had not rescinded or repudiated the agreement nor charged fraud or mistake and could not defend on such ground; and refused leave to amend. This raises the principal question in the case.

Preliminary thereto, defendant claims the policy is void, because assured swore falsely in his proofs of loss, under the provision:

"This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The clause is effective. *Monaghan* v. *Agricultural Fire Ins. Co.*, 53 Mich. 238. But, in order to avoid the policy, the false swearing must have been done with an actual intent to defraud the insurer. *Brunswick-Balke-Collender Co.* v. *Northern Assurance Co.*, 142 Mich. 29. Had defendant rested upon the proof of loss and not made a subsequent adjustment, the testimony would have presented an issue of fact on this point.

In *Fuhrman* v. *Sun Ins. Office of London,* 180 Mich. 439 (Ann. Cas. 1916 A, 466), it is suggested

that a false proof of loss does not avoid a policy where the insurer has not been misled thereby. 26 C. J. p. 386. Obviously such provision, like many others, may be waived by the insurer. Where, disregarding the proof of loss, the insurer makes an adjustment with the insured, in which the proof of loss is not a factor, no reasonable construction of the contract, or view of its purpose, could permit the insurer to repudiate its agreed adjustment and hark back to the proof of loss.

The proof of loss was filed with the company before the adjustment was made. It does not appear that the false proof covering the property in issue was received by the adjuster before it agreed with plaintiff and assured upon the amount of the loss. In any event, there is no evidence that the adjuster had examined the proof of loss before entering into the compromise or, in fixing the amount of any offer or the final sum, relied on any representations of assured made therein or otherwise. The evidence does not raise an issue of fact of fraud.

An adjuster, where the assured knows no limitations on his authority, may bind the insurer as to the amount of the loss. When the adjuster signed the proof of loss prepared by it and executed by the assured, and forwarded it to the company, it became a contract between the company and the assured, ascertaining the amount of the loss according to the terms of the policy. *Wilms* v. *New Hampshire Fire Ins. Co.,* 194 Mich. 656.

In proceeding to compromise without reference to the proof of loss or reliance on it, defendant waived the right to later attack it.

Defendant contends a jury question was raised as to chattel mortgages. It points to no provision of

the policy rendering it void for such incumbrances. The policy provided:

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder."

It is undisputed that the chattel mortgage executed to plaintiff two days after the policy was issued was released as to the insured property before the fire.

Another mortgage, given in 1927 to George Gerhauser, with renewals, covered property once in assured's plant. Some of it was removed before the policy was written, leaving a small part unreleased. We find no testimony in the record that the property covered by this mortgage was included in the claim of loss nor considered in reaching the compromise.

Several other questions are raised but they are controlled by the above and need not be discussed.

Judgment affirmed, with costs.

Nelson Sharpe, C. J., and Potter, North, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.