**Khadouri CHAACHOU, Appellant,**

v.

**AMERICAN CENTRAL INSURANCE COMPANY, Appellee.**

**No. 16023.**

United States Court of Appeals
Fifth Circuit.

March 1, 1957.

Sarino R. Costanzo, David W. Walters, Miami, Fla., for appellant.

Geo. J. Baya, Miami, Fla., for appellee.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The sole substantial question in this hoary claim which soon rounds out its tenth year is whether, to avoid the policy because of fraud, misrepresentation, concealment and false swearing by an assured in connection with a loss for windstorm damage from the Miami hurricane of September 17, 1947, the insurer must prove that it relied, to its detriment, prejudice and damage, upon such fraudulent acts.

The issue is squarely posed. First, the contract[1] is categorical. Second, the assured for this appeal virtually concedes, as the record requires in any event, that there was ample evidence to warrant the inference by the jury that the assured knowingly made false, untrue statements and representations on substantially material matters in connection with the loss.[2] Third, the Court, without requiring proof or finding of

---

1. The standard Extended Coverage Endorsement insuring "direct loss or damage by windstorm, cyclone, tornado and hail * * *" was a part of a fire policy written on the 1943 New York Standard Fire Insurance Policy form, see Annotation of the 1943 New York Standard Fire Insurance Policy, published by Section of Insurance Law, American Bar Association, 1953. Of interest, see note 6, infra, is the special endorsement expressly providing: "This policy is written subject to the provisions, stipulations, agreements and conditions of the 1943 'Standard Fire Insurance Policy of the State of New York,' (Chapter 671—Laws of New York, 1943 [Insurance Law, McKinney's Consol.Laws, c. 28, § 168]) and to the terms and conditions of the forms and endorsements added hereto, and shall be construed in accordance therewith."

The policy provided:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured thereon, or in case of any fraud or false swearing by the insured relating thereto."

2. Viewed favorably to the jury verdict for the insurer, these included with much

prejudicial reliance, very precisely instructed[3] the jury to return a verdict for the insurer if they found that the assured had wilfully made intentional

more: the claim, in the sworn Proof of Loss, that the total damage amounted to $14,809 of which the underwriter was liable under 90% co-insurance for $11,100.75 when, in fact, damage from the insured perils did not exceed approximately $600; inclusion in this total claim the sum of $3,675 for damage to roofs when, in fact, roof damage was confined to a specific area and a second bid obtained by the assured but concealed from insurer was for $580 and a bid obtained by insurer's adjuster was for $600; the inclusion of large sums for damage to lathing and plastering ($1890), flooring ($815), painting and decorating ($3330) for interior damage claimed to have been caused by wind when, in fact, the policy excluded "any loss or damage caused by water or rain, whether driven by wind or not, unless the building insured * * * shall first sustain an actual damage to the roof or walls by the direct force of the wind, and shall then be liable only for such damage to the interior of the building or the insured property therein, as may be caused by water or rain entering the building through openings in the roof or walls made by the direct action of the wind * * *", and to the assured's knowledge no such openings had in fact been made by the hurricane; the claim that the itemized damage to the interior was due to windstorm when, in fact, the policy excluded "* * * loss or damage occasioned directly or indirectly by or through any tidal wave, high water, overflow, cloudburst * * *", and which was, to the assured's knowledge, in fact, the source of water, if any, getting into the interior; the claim in the sworn Proof of Loss, respecting adjustment under the 90% co-insurance clause that the cash value of the property was $80,000 when, in fact, it had recently been listed and offered for sale by the assured at amounts ranging from $250,000 to $375,000. A likely telling piece of evidence persuasive to the jury on conscious misstatements by the assured was the admitted use and submission of damage estimate by a construction company whose fee for the estimate was 10% of the ultimate insurance recoveries, and the adjuster's testimony, not denied, that the assured " * * * told me that he knew * * * [this contractor] was a crook * * *."

3. "* * * since the insurance company has alleged fraud in this case, the burden is upon it to prove the fact of fraud by the greater weight of the evidence; that is to say, that the evidence or proof tending to establish fraud on the part of the plaintiff must be more convincing to the jury to sustain the claim of fraud then the testimony tending to show an absence of fraud or good faith * * *

"It is not the purpose of a provision making a policy void or voidable where the insured has wilfully misrepresented facts, wilfully concealed facts, or, is guilty of false swearing to put every insured in danger of losing the entire benefit of his insurance if, in an honest effort to determine and state the property damaged and the value thereof, he inadvertently misstates or over-estimates its value, the damage thereto or the cost of repairs. A mere misstatement of the loss, based upon erroneous estimate which is but the expression of an opinion, does not operate to void the policy. The misstatement must be false and fraudulent.

"In this case, as the Court has already advised the jury, it is the claim of the defendant that the plaintiff overstated or exaggerated the exent of his damage and that he made material misrepresentations to the insurance company for the purpose of influencing them to pay him money to which he was not lawfully entitled and to which he knew he was not lawfully entitled under the terms of the policy.

"Now, in cases of insurance where the insured knowingly and wilfully makes any statement or representation as to a fact material to the claim under the policy with knowledge of its falsity it is presumed that he intended to defraud the company. It must be established, however, by a preponderance of the evidence that the insured in making such statements, if they were false, knew they were false and that they were material to the claim involved, that is to say, that they affected the liability of the company to pay. If the plaintiff in this case made representations to the insurance company that were false and were material to the claim and he knew them to be false, then he would be guilty of fraud which would defeat his action in this case. However, if such statements were made in good faith, even though erroneous, if they were an exaggeration of the value or other claims although made in good faith with the honest belief that they were true, then he would not be guilty of actionable fraud which would defeat his action in this case. * * *

"The Court further charges the jury that if you find that the plaintiff has knowingly made a false statement as to

false statements of material facts. Finally, the assured, by requested charges [4] and exceptions, articulately directed the Court's attention to his contention that reliance and prejudicial detriment had to be shown to void the policy for misrepresentation, false statement, concealment and fraud.

■ We think that, as against this attack, the Court's charge was eminently correct. We start, first, with a contract which, plain in its terms, cannot be ignored by invoking the principle which deplores forfeitures, Fidelity-Phenix Fire Insurance Co. of New York v. Benedict Coal Corporation, 4 Cir., 64 F.2d 347, certiorari denied 289 U.S. 762, 53 S.Ct. 795, 77 L.Ed. 1505, or construes policies most strongly against the insurer and in favor of the assured, Palatine Insurance Co. v. Whitfield, 73 Fla. 716, 74 So. 869. Thus the agreement of the parties called precisely for honesty and fair dealing by the assured and unless there be a public policy against people contracting to be honest and refraining from wilful false swearing and misrepresentation, it is a contract which, as any other, ought to be enforced. Taking our Erie lights, as best we can, Meredith v. City of Winter Haven, 320 U.S. 228, 238, 64 S.Ct. 7, 88 L.Ed. 9, 15, Florida, whose policy controls here, recognizes this, we think, as a valid area for contract, American Insurance Co. of Newark, New Jersey v. Robinson, 120 Fla. 674, 163 So. 17, see Hartford Fire Insurance Co. v. Hagger, 5 Cir., 196 F.2d 270.

■ The contract does not spell out that it is only false swearing, misrepresentation, concealment or fraud which is successful that avoids the policy. Nor is there any reason why any such condition should be read into it. Clearly, in the absence of a statute,[5] the law, which is founded on truth and justice, will not regard it as unsound that a person has lost the benefit of the contract by wilful, immoral, dishonest acts which the contract itself condemns.

Moreover, if the law out of some misgivings about forfeitures, were to require that the insurer demonstrate that it had been misled to its prejudice by the fraud, the policy provision would both be virtually worthless and put a premium on dishonest dealings by the assured. For if, by its own investigation, inspired perhaps by suspicions of the assured's efforts to misrepresent, the insurer satisfied itself that a fraud had been attempted and declined to pay, such a rule would mean that the assured's claim would then stand as though no dishonest acts whatsoever had been practiced. The mendacious assured, surveying the possibili-

a material fact, his intention to deceive the defendant is necessarily implied. That is to say, as the Court has already instructed the jury, if you find from a preponderance or greater weight of the evidence in this case this plaintiff made false statements to the insurance company as to a material fact in connection with his claim or the defendant's liability, then the fact of his having made them knowing them to be false, is fraud under the law * * *."

Then followed an instruction putting the burden of proving fraud on the insurer and authorizing the jury to consider both direct and circumstantial evidence which was defined.

4. The Court refused the requests, separately requested but adapted suitably at the italicized words for false representation, concealment, false swearing:

"The Court further charges you that the defendant must have relied upon the *representation* as an inducement to action by it or an injurious change of position. A party may not just accept any statement as being true. A person to whom *false representations* have been made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention. If defendant investigated the truth of the *statements*, or if it had full and ample opportunity to do so, it is bound by its investigation or whatever an investigation would have disclosed."

5. E. g., Art. 21.19, Texas Insurance Code, V.A.T.S.; Firemen's Fund Ins. Co. v. Reynolds, Tex.Civ.App., 85 S.W.2d 826, 829, error refused; Annotation of the 1943 New York Standard Fire Insurance Policy, supra, at p. 66, § 4 referring to the analytical treatment of such statutes by Patterson, Essentials of Insurance Law (1935) §§ 72–85, pp 309–378.

ties and contemplating prospective tactics and strategy in the handling of his claim, would sense immediately that vis-a-vis himself and the underwriter, there would be no risk at all in his deceit. If it worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud were discovered in time to be legally or practicably effective. If it didn't work—if, before consummation, fraud was detected—he would suffer no disadvantage whatsoever. It would be an everything-to-win, nothing-to-lose proposition.

Additionally, such a rule would cast the underwriter in a role for which it is unsuited and in a process which the general good, out of long experience, considers best performed by government machinery. Convinced, as here by its own investigation of the claim, of dishonest acts by the assured, it would then have to undertake the talks of segregating truth from untruth, ferreting out the honest from the dishonest, choosing the right from amongst the wrong with all or much of the factual material coming from one now considered to be morally unreliable.

The public interest is not furthered by these likely consequences of reading into the contractual language this burden nowhere expressed. A judge-made policy which thus gives advantage to dishonesty will retard, not accelerate, the orderly adjustment of insurance losses. If the insurer, from the strong language of the contract interpreted in equally plain terms by the law, is entitled to assume that the assured is dealing honestly and fairly, asserting only that which in good faith is believed to be the substantial truth of the matter, the claim can be handled in a spirit and atmosphere of confidence. If, on the other hand, the insurer must realize that fraud is significant only if it is finally successful, that the slate is wiped clean if its own investigation uncovers the assured's cozening, the setting may then become one of hostile antagonism, reluctance and apprehension forcing more, not less, litigation.

 Courts have long recognized that, "The moral hazard is one of the main elements, if not the chief element, of an insurance risk, and it is never negligible. It is always material to the risk", Connecticut Fire Ins. Co. v. Manning, 8 Cir., 160 F. 382, 385. It reflects the assumption that the relationship created by the contract is one requiring the utmost of honest, good faith dealing. Globe & Rutgers Fire Ins. Co. v. Stallard, 4 Cir., 68 F.2d 237, 240. This clause then is but means of demanding, at a critical time, moral uprightness and conduct of the kind basic to the genesis of the undertaking.

This presents no danger that valuable rights will be lost by mere mistakes or errors in calculations, exaggerations in the amounts of the claims, or the assertion, even though doubtful, of coverage or other contentions as to all or particular items when these flow from the mistaken good faith judgment or opinion of the assured or his agents. Canners Exchange Subscribers at Warners Inter-Insurance Bureau v. North American Canning Co., 5 Cir., 194 F.2d 588, 589. For the courts will, as did the District Court here, make it positive that the insurer must satisfy the heavy burden of establishing that the conduct complained of was done and was a wilful, purposeful misrepresentation of facts having substantial materiality under circumstances to which the law would attribute the intention to defraud, Claflin v. Franklin Ins. Co., 110 U.S. 81, 3 S.Ct. 507, 28 L.Ed. 76, that is, cheat, deceive and cause the insurer to do other than that which would have been done had the truth been told.

 Attesting, we think, to the fundamental justice of a position which exacts genuine compliance with an undertaking to be honest and truthful, is the fact that there is a scarcity of case law

on this point. And what there is, rejecting,[6] with the rarest exception,[7] the contention that damage and prejudicial detriment must be shown, stems from timeless landmark cases such as Claflin v. Franklin Ins. Co., 1884, supra, and Virginia Fire & Marine Ins. Co. v. Vaughan, 1892, 88 Va. 832, 14 S.E. 754.

■ The charge was correct and, no other error being demonstrated,[8] the judgment was right.

Affirmed.

---

6. Columbian Insurance Co. of Indiana v. Modern Laundry, 8 Cir., 277 F. 355, 359, 360, 20 A.L.R. 1159; Moreau v. Palatine Ins. Co. of London, England, 84 N.H. 422, 151 A. 817; Meyer v. Home Ins. Co., 127 Wis. 293, 106 N.W. 1087, 1089:

" * * * If the plaintiffs, knowingly and willfully with intent to defraud the defendants, swore falsely in making the proofs of loss, such act amounted to a fraud upon the defendants, which avoided the policies, irrespective of the ultimate effect upon the defendants. If the false swearing must secure an advantage to the insured in the adjustment and payment of the loss to the prejudice or injury of the insurer, in order to avoid the policies, the purpose of this provision would, in many cases, be nullified * *. Such a construction would defeat the object of this wholesome provision designed to prevent fraud and false swearing, and is wholly inconsistent with its purpose and policy. * * * "

Kline v. Washington National Insurance Co., 217 Wis. 21, 258 N.W. 370; Bahr v. Union Fire Ins. Co., 167 Minn. 479, 209 N.W. 490; Saidel v. Union Assur. Soc., Ltd., 84 N.H. 232, 149 A. 78; Globe & Rutgers Fire Insurance Co. v. Stallard, supra; 29 Amer.Jur., Insurance, § 1132, p. 850; 45 C.J.S., Insurance, § 1021, p. 1245; and see, Vance on Insurance (By Anderson, 3rd Ed. 1951), § 143, Fraud or False Swearing, p. 840, "In accordance with the stipulation of the policy, the insurer is entitled to the exact truth with reference to the subjects of his interrogation, and any statement known by the insured to be false would absolutely defeat his claim to indemnity." Richards on Insurance (Freedman, 5th Ed. 1952), Vol. 3, § 510, p. 1054: "The fatal effect, however, of a wilful misstatement of fact is not disturbed because of the failure of the company to prove that prejudice was thereby occasioned * * * "; 5 Appleman, Insurance Law and Practice, § 3587, Fraud and False Swearing, "such a provision [in the policy] is for the protection of the insurer, and is valid * * * " (p. 761); " * * * where the insured has attempted to defraud the insurer * * * avoidance is not dependent upon the success of the attempt * * * " (p. 763);

and see pp. 770–771; Appleman, Inland Marine Insurance (1934) § 43, pp. 63–66; Rodda, Inland Marine and Transportation Insurance (1949) p. 61; Mowbray, Insurance (1946), p. 74; Mortimer, Inland Marine Insurance (1934), p. 346.

The cases distinguish between fraud inducing the execution of a contract and the defense of a claim under the contract. Columbian Insurance Co. of Indiana v. Modern Laundry, supra, and Annotation of the 1943 New York Standard Fire Insurance Policy, supra, at p. 66, "The distinction between false swearing, fraud and misrepresentation *after a loss* and *prior to loss* is that in the former the policy is specific that it shall be void where such false swearing and fraud occur. In the latter, such conduct must be relied upon and have induced action * * * " (Emphasis in the text).

7. See, 45 C.J.S., Insurance, supra, at p. 1250, "According to some cases, in order to defeat a recovery, the false statements must have misled the insurer to its injury * * * ", citing Alma State Savings Bank v. Springfield Fire & Marine Ins. Co., 268 Mich. 631, 256 N.W. 573, and 5 Appleman, Insurance Law and Practice, supra (Supp.1957), citing Imperial Assurance Co. of New York v. Joseph Supornick & Son, 8 Cir., 184 F.2d 930, each of which was a suit, not on the insurance policy, but the quite different one to enforce a binding settlement agreement made after negotiation subsequent to the loss. In Alma the court actually held that the requirement of Proof of Loss had been waived and settlement made independent of it; in Supornick the insurer undertook, without objection, to prove reliance and injury. The decision merely affirmed trial court's findings, FRCP 52(a), 28 U.S.C.A. of no wilful misrepresentation.

8. The innocuous catchall in the very last sentence of the assured's brief, " * * * it is further pointed out to the Court that the District Court's charges to the jury concerning the quality of evidence to prove fraud, and the unnecessary and unwarranted emphasis of the Court on the question of fraud served to work to the appellant's prejudice and constituted additional error * * * ", is, in the face of a 435-page printed record containing

twenty-three written instructions requested but refused and detailed oral testimony of the thirteen witnesses, hardly compliance with either the spirit or letter of our Rule 24(2), 28 U.S.C.A. or the burden of F.R.Civ.P. 61. If error can be so summarily assigned and argued, it can be disposed of with the same brief finality: upon examination we find nothing to it.