Frank Appa, Appellant, v. The Pennsylvania Fire Insurance Company of Philadelphia, Pennsylvania and the Reliance Insurance Company of Philadelphia, Pennsylvania, Appellees.

Gen. No. 41,259.

DENIS E. SULLIVAN, J., dissenting.

Opinion filed November 20, 1940. Rehearing denied December 11, 1940.

ALLAN R. BLOCH and B. M. STEINER, both of Chicago, for appellant; B. M. STEINER, of counsel.

MCKINNEY, FOLONIE & GREAR, of Chicago, for appellees.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment at the conclusion of the hearing, entered by the court on the verdict of the jury, in favor of the defendants in the action. This suit was instituted by plaintiff against the defendant insurance companies to recover damages resulting from a fire in plaintiff's place of business located at 3255 Ogden avenue, Chicago, Illinois, predicated upon two insurance policies in the face amount of $2,500 and $1,500, respectively. Various articles of personal property were alleged to have been destroyed or damaged by fire to the extent of $3,818.95.

Plaintiff's statement of claim alleges that the defendant, the Pennsylvania company, issued its policy of fire insurance dated February 9, 1938, for $1,500, and the defendant, the Reliance company, issued its policy of fire insurance dated January 2, 1938, for $2,500, in consideration of premiums paid and to be paid, covering contents of the said premises; that the plaintiff was then, and at the time of the fire, interested in the said contents to the amount so insured; that on June 19, 1938, the contents and property were destroyed or damaged; that the cash value of the property was $4,654.55 and the whole loss and damage sustained was $3,818.95; that the defendants are liable for their respective proportions and are liable in those proportions as the amount of the loss is to 90 per cent of the actual cash value of the property; that the Pennsylvania company is liable to plaintiff in the sum of $1,366.22, and the Reliance company liable in the sum of $2,277.05.

Defendants filed a joint statement of defense alleging that the policies were different than alleged by plaintiff, and that each was issued not only for consideration of premium but in consideration of divers stipulations in the policy; that each policy provided that the plaintiff, as often as required, should produce for examination all books of account, bills, invoices,

etc., and that no suit or action on the policy for the recovery of any claim shall be sustainable until after compliance with such requirement; that the defendants, by their adjuster, requested the plaintiff to produce for examination at plaintiff's place of business all his books of account, bills, invoices, etc., and the plaintiff did fraudulently represent that he kept no books of account, had no bills, invoices or other vouchers except one invoice which plaintiff produced for examination; and so the defendants say plaintiff may not recover.

It is further alleged that each policy of insurance contains a provision that it shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof; or if his interest in the property be not truly stated in the policy; or in case of any fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after a loss; that plaintiff did present a detailed list of articles to the defendants claiming total value of the property in the amount of $4,570.55, and fire loss of $3,766.95, and later in the month of December, did present a sworn statement in proof of loss in which he claimed the cash value of the property was $4,654.55, and that the loss and damage by fire was $3,818.95. Each defendant says plaintiff, by his schedule or memorandum in writing, mispresented a material fact or circumstance in representing the supposed value and the supposed direct loss and damage by fire in sums exorbitant and excessive beyond any matter of opinion; that the plaintiff is guilty of fraud touching a matter relating to the subject of insurance and that the plaintiff is guilty of false swearing in the statement in proof of loss in alleging the value to be in excess of $4,500, and the loss and damage by fire to be in excess of $3,700. Each defendant says that the said representations in the

schedule and proofs were made with knowledge of their falsity and that the total loss and damage by fire was approximately one-fourth of the amount so claimed by plaintiff as his total loss and damage; and so each defendant says that plaintiff may not by the terms of his contract, recover.

Each defendant further says that its policy of insurance provided that the plaintiff should, within 60 days after the fire, render a sworn statement in proof of loss, etc., and that no action for the recovery of any claim is sustainable in any court of law until compliance with such provision and that plaintiff did not render the sworn statement in proof of loss within 60 days after the fire; and so each defendant says plaintiff may not recover.

From the facts, it appears that the plaintiff, Frank Appa, and Paul Appa, his brother, were in the used furniture business and maintained a place of business at 3255 Ogden Avenue, Chicago, Illinois. Apparently the business was operated by Paul Appa, but the money was furnished by the plaintiff, and at the time of the fire there was due him from Paul Appa the sum of $2,550. When the business was started the plaintiff applied for fire insurance as to the contents of the premises in question and the policies were issued by the defendants and delivered to the plaintiff. The Pennsylvania Fire Insurance Company issued its policy in the face amount of $1,500, to the plaintiff, doing business as Independence Furniture Company on February 9, 1938, insuring plaintiff against loss or damage by fire for a period of one year. The Reliance Insurance Company issued its policy in the sum of $2,500 on January 2, 1938, insuring plaintiff, doing business as the Independence Furniture Company for a period of one year. The premiums on both policies were duly paid.

On June 19, 1938, a fire occurred in the premises and it is contended by plaintiff that much of the per-

sonal property was destroyed and damaged. Plaintiff did not arrive at the scene of the fire until the following afternoon, when he briefly examined the interior of the premises and discussed the matter with his brother. Plaintiff's brother, Paul Appa, was in the furniture business for 11 years. As soon as he heard about the fire he went to the premises and saw many firemen on the scene, but he did not know how the fire occurred. After the fire a memorandum was prepared in the handwriting of Paul Appa in which the merchandise was listed as claimed according to the instructions of the agent of the defendants, C. T. Hynous, and each item was inspected, its value before the fire, and the loss sustained, was thereupon marked down on the inventory. This was afterwards typed and upon the trial, received in evidence as plaintiff's exhibit 11.

Numerous conferences were held in regard to the loss sustained between the plaintiff and his brother on the one hand and Mr. Hynous as the agent for the insurance company on the other. During the latter part of November, the plaintiff claims, at one of the conferences the defendants' agent offered plaintiff the sum of $3,000. It also appears from the facts in evidence that a sworn statement in proof of loss was duly delivered to each of the defendants, to which were appended itemized lists describing the property lost, damaged or destroyed by the fire, the value of each item before the fire, and the claimed loss; and that plaintiff's evidence touching upon the value of the property after the fire, is the testimony of the plaintiff, Frank Appa, relating chiefly to the values of the ice boxes and refrigerators, the testimony of Paul Appa with reference to each item contained in the inventory, and the testimony of Ignatius McCauley.

It is contended that there was no dispute according to the evidence that a fire actually occurred and that some of the personal property located in the store was affected thereby; and that there is no dispute about the

fact that Mr. Hynous, appeared in the premises after the fire and discussed the matter of the loss with the plaintiff and his brother. It is claimed that it was admitted by the defendant that an inventory was prepared, and the witness, Paul Appa, testified that it was prepared in accordance with Mr. Hynous' instructions. Each of the policies in question contained this provision:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject matter thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss."

The affidavit of defense filed by the defendants in relying expressly upon this provision states in substance that after the fire the plaintiff represented the total value of the property on which plaintiff was insured to be in the amount of $4,570.55, and the total loss to be in the sum of $3,766.95, and states further that thereafter, in December, 1938, by the proof of loss submitted by plaintiff to the defendants, plaintiff represented that the cash value of the property was $4,654.55, and the loss and damage by fire was in the total amount of $3,818.95. Plaintiff does not deny that there is some conflict in the testimony as to the portion of the premises affected by the fire, but contends that there is no question but what all the items listed in the inventory, contained some evidence that they had been in the fire, either as a result of smoke, charring, destruction or water stain.

It does appear from the evidence that C. T. Hynous was an employee of Underwriters Adjusting Company; that he had been a fire insurance adjuster for 14 years, during which time he had adjusted on the average of

about 200 claims per year where household furniture was involved in fire losses, and about 100 claims per year where stocks of merchandise were involved. He was at the scene of the fire the next morning after it happened and looked over the place generally, spoke with Paul Appa in the presence of plaintiff's insurance broker, gave Appa instructions that claim should be presented and said something about preparing an inventory. An inventory was presented to him some days later and in this the property was divided into lots. Hynous testified that he did not say anything about dividing it into lots or listing it in lots. Paul Appa says he did. It evidently was done by a Mr. McCauley, employed by plaintiff, who testified that he arranged the property, divided it into lots and numbered the lots as was his custom.

It further appears from the evidence of adjuster Hynous that he received a copy of the inventory, and afterwards went out there again, saw Paul Appa and the broker with whom he checked each item and made his personal notation on each. The original paper with these pencil notations was offered in evidence as plaintiff's exhibit 11. At this time Hynous checked over the lot of refrigerators mentioned on the left side of the aisle. These were listed as lots 98 to 105, inclusive, in the inventory, a total of 346 boxes, which plaintiff claimed to have a total value of $1,400 and on which he made claim for $1,190. None of the panel board cartons or the crates about these respective boxes were in any way charred or burned. The only damage the adjuster saw was soiling on the outside of the cartons, and he made an allowance of $86.50 for cleaning the crates. This lot of refrigerators was not moved after the fire; none of the crates were opened; none of the paper was taken off and they remained wrapped exactly as they came from the factory. To the rear of the refrigerators were articles called stone or concrete benches. This is numbered lot 81 in the in-

ventory, and they were in boxes, but there was no charring or burning on the boxes but the boxes were smoked. The adjuster went through all the articles which were there and made his estimate and noted in the inventory the expense of wiping off, cleaning, repairing, etc., as to each item; when an item was damaged beyond repair, he marked down his judgment of the replacement value, and in so making these figures he used his best judgment based on his experience. In the case of lot numbered 62, he guessed off an amount by taking half of the plaintiff's claim on that lot by considering the character of the other merchandise there. The total of his figures for all loss and damage by fire and its consequences was $932.82, and his figures were his best judgment of the damage or loss to each article. He gave the broker that total figure, who reported it to Paul Appa. Sometime afterwards he gave his figures by writing them on a copy of the inventory or schedule which he gave either to Paul Appa or Mr. Bloch, the plaintiff's attorney.

Frank Appa stated that he, his brother and Attorney Bloch went to Hynous' office the latter part of November and talked about the lots; that Hynous said he had made his best offer; his brother asked how he arrived at the figure and Hynous took an inventory and started marking down what he thought the loss was, and arrived at a figure of $3,000, which is the subject matter of dispute.

Plaintiff executed sworn statements in proof of loss on December 5, 1938, and the following month the suit was brought.

The plaintiff in his argument for reversal of the judgment that was entered by the court on the verdict of the jury contends that the mere fact that the assured in the proofs of loss made by him to the insurer pursuant to the terms of the policy, made an overvaluation of the property destroyed, will not defeat a recovery on the policy for the actual loss sustained.

As we have already quoted from the insurance policies in question, the policies provided that "This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning this insurance or the subject matter thereof"; . . . The plaintiff believes and points out as significant that no misrepresentation is claimed by the defendants to have been made by the plaintiff when the policies were applied for, to which the defendants have indicated that there was no occasion to assert nor was any misrepresentation made to the companies when the policies were applied for. Plaintiff urges further that the matter of fraud is limited solely to the statements as to the amount of loss suffered by the plaintiff in consequence of the fire, and further urges that while there is some conflict in the testimony as to the portion of the premises affected by the fire, there is no question but what all the items listed in the inventory, contained some evidence that they had been in the fire, either as a result of smoke, charring, destruction, or water stain.

The reply of the defendants to the issues urges that the leading issue in the case was plaintiff's inordinate claim, excessive beyond any matter of opinion, and that the evidence of plaintiff's fraud and false swearing clearly proved him guilty and presented a question for the jury which they decided adversely to the plaintiff. Defendants point to the plaintiff's citation of authority in which it is claimed by plaintiff that the mere fact that the assured made an overvaluation in his proofs of loss, etc., will not defeat a recovery on the policy for the actual loss sustained; and defendant urges that in the opinion in this cited case, entitled *Commercial Ins. Co. of California v. Friedlander*, 156 Ill. 595, the principle of law which controls is completed by the following: "If the assured, in making proofs of loss, acts in good faith, in the honest belief that the property destroyed was worth the amount of

the valuation placed upon it, and the excessive valuation was not intended to deceive or defraud the insurance company, such over-valuation cannot be held to be fraudulent, and it will not defeat a recovery.''; so that the question in this case will largely depend upon its coming within the rule as laid down by our Supreme Court in the case cited. It was for the jury, under the instructions of the court, to pass upon the evidence as it was presented by the parties to this litigation.

It does appear that defendants presented affirmative defenses that the plaintiff wilfully and with knowledge of their falsity made representations to the defendants in his schedule or inventory, and falsely swore in proofs of loss rendered to the defendants, that his loss and damage caused by the fire was in an amount in excess of $3,700, which defendant urges is an amount excessive beyond any matter of opinion and about four times the amount of the actual loss and damage sustained. There is evidence of defendants in the record which fixes the loss in the sum of $932.82. Defendants contend that in establishing these affirmative defenses, it is only necessary that the facts establish such defenses by a preponderance or greater weight of the evidence. In the discussion of this case, it is important to have in mind the rule such as has been established by our Supreme Court in *Sundquist v. Hardware Mut. Fire Ins. Co. of Minnesota,* 371 Ill. 360, where it is to be noted from the opinion of the court that;

''This court has heretofore adhered to the reasonable doubt rule requiring the facts constituting the felony to be proved beyond a reasonable doubt. (*Germania Fire Ins. Co. v. Klewer,* 129 Ill. 599; *Oliver v. Ross,* 289 id. 624; *Rost v. F. H. Noble & Co.,* 316 id. 357.) However, in *Rost v. F. H. Noble & Co., supra,* we limited the rule to felonies, excluding misdemeanors, and pointed out that although followed in some of the States the principle had been generally abandoned. In the later case of *People v. Small,* 319 Ill. 437,

we indicated a doubt as to whether or not this rule would again be applied in this State. The case before us now presents the necessity for further consideration of this principle." The opinion then goes on to discuss the reasonable doubt rule as it originated in England and adopted in this country, and finally, after citing numerous cases, the court stated that the reasonable doubt rule, as stated in *Rost v. F. H. Noble & Co., supra,* and the cases therein cited, will no longer be adhered to in this court. When we come to consider this question, as to what rule should be applied, the defendants call attention to the fact that the plaintiff in the instant case did not and would not let the defendants know where the merchandise was purchased and what was paid for it except that they had bought a certain quantity of "stuff" for a certain sum of money from Greenville, Michigan, but what part of that "certain quantity" had been sold during the two years before the fire and whether they had found that the articles remaining from that purchase had no value or were not saleable, they did not tell the defendants. The plaintiff did not produce for examination books of account, bills and invoices, on request by the defendants, which was required by the provisions of the policies, wherein it is provided;

"The insured . . . as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made." The adjuster asked for the books and records to prove up the values, and was informed by Paul Appa that there were no books but Appa did pull out one book on which he had a typewritten account on one page respecting the Gibson refrigerators purchased in 1936. The adjuster looked through the other pages and there were some accounts about some furniture, but what it re-

ferred to he could not say. He tried to ascertain how the other articles were purchased and their costs, and was told by Appa that he had no records of where they were made and said that he did not keep any records; so that the examination was somewhat limited by the facts that were ascertained and did not aid materially in the determination of the question as it should have done. And when we consider all of the evidence in this record it was clearly a case for a jury to pass upon, and in passing upon it and finding for the defendants, we believe there was sufficient evidence to sustain the finding.

There was one further question called to the attention of this court, namely, that the court erred in refusing to give certain instructions requested by the plaintiff, and attention is called to the fact that five instructions were given by the court relative to fraud at defendants' request. The defendants' reply to this contention states that the record does not show an objection was made by plaintiff to the court's charge before the jury retired, and shows that plaintiff did not object or specifically point out any part of the charge that he objected to as erroneous or that he indicated any correction he desired to have made, and suggests that under the circumstances plaintiff may not predicate error on the giving of any certain part or parts of the charge, and cite in support of this contention the case of *Paulick v. National Bank of Republic*, 279 Ill. App. 160, which is based upon a like question as now before the court. In that case the court said;

"The purpose of the rule is to enable the trial court to make necessary corrections if proper objections are made, and unless the party complaining makes objections and the same appear in the record, he waives his right to complain. It does not appear from the record that the plaintiff tendered to the trial judge requests in writing for specific instructions to the jury as to

matters of law, which is required by Rule 170, adopted by the municipal court of Chicago, and these requests are to be presented before the commencement of argument of counsel, or within such time as the court may permit.

"Plaintiff, however, contends that where the errors go to the very foundation of plaintiff's recovery and wholly control the verdict, such errors should, in the interests of substantial justice, be reviewed by this court, with or without exceptions to the ruling of the trial court.

"While the position of the plaintiff is true, in part, failure to except may not always deprive a litigant of the right to be heard where objection is made at the proper time to the alleged improper ruling of the trial court. But to say that where no objection or exception is taken to an improper ruling this court should consider such ruling on appeal, would tend to confusion rather than to an orderly disposition of litigation. A litigant cannot stand by and permit improper evidence or ruling of the court to take place during the course of a trial without making known his objections, and unless he does this he cannot for the first time in this court question the ruling of the trial court because he is not satisfied with the judgment. There are numerous authorities of courts of appellate jurisdiction upon the failure of a party litigant to request instructions, and the rule generally supported by the authorities is that a party cannot complain that an instruction was not given where he does not show that the court was requested to give the instruction and refused to do so. (Citing cases.)" Defendants also cite the case of *Greer v. Shell Petroleum Corp.,* 281 Ill. App. 238, where this subject was considered under section 67, Civil Practice Act, ch. 110, par. 195; as it then existed it is quite similar to municipal court of Chicago rule 171. The court there said that the evident purpose of the requirement of said section 67, that the objections be specific, is to point out to the court

wherein the alleged error lies, to the end that same may be obviated; and an objection which fails to do so is not in compliance with the statute. And again under said section 67 of the Civil Practice Act as it then existed, the same rule is considered in *Zorger v. Prudential Ins. Co. of America*, 282 Ill. App. 444. The court in its opinion there said:

"As the record is silent as to the objections of the defendant, the question before us at this time cannot properly be considered in determining the question whether because of erroneous instructions a new trial should be granted." Other cases which support the contentions that were urged by the defendants in the instant case are; *Illinois Tuberculosis Ass'n v. Springfield Marine Bank*, 282 Ill. App. 14, and *Home Life Ins. Co. v. Franklin*, 303 Ill. App. 146.

The plaintiff further contends and criticizes the court's charge and seeks to divide the charge into instructions, and says that nine of the instructions dealt specifically with the issues in this case; that of the nine, five dealt with fraud and false swearing and only one of those presented the plaintiff's theory, and at another place says that all five of the instructions relating to fraud were requested by the defendants. While there is some criticism of the instructions as given, from an examination of the record we think that the matter has been given to the jury who have been guided by their deliberations, and considering the facts as we have indicated, which were contraverted questions, and the case as it appears from the briefs of the parties, we are of the opinion that the court did not err in entering judgment on the verdict of the jury.

The judgment is accordingly affirmed.

*Affirmed.*

Burke, J., concurs.

Mr. Justice Denis E. Sullivan, dissenting: I think it an injustice that the insured be not paid his conceded loss.