376 F.2d 502
 24 A.L.R.3d 443
 MERCANTILE TRUST COMPANY, a Corporation, as Trustee,
Plaintiff-Appellee,
v.
NEW YORK UNDERWRITERS INSURANCE COMPANY, a Corporation, and
Edward D. Luer, Defendants, New York Underwriters
Insurance Company, Appellant.
 No. 15925.
 United States Court of Appeals Seventh Circuit.
 May 4, 1967.
 
 J. Fred Schlafly, Alton, Ill., John H. Cunningham, Jr., St. Louis, Mo., for appellant.
 Robert B. Maucker, James K. Almeter, Alton, Ill., for appellee.
 Before CASTLE, KILEY and CUMMINGS, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In this diversity action, the Mercantile Trust Company ('Mercantile') of St. Louis, Missouri, has sued to recover $20,000 insurance for the loss of a dwelling house, whose title was held by Mercantile in trust for the benefit of Edward D. Luer. After a bench trial, the District Court held for Mercantile, and the New York Underwriters Insurance Company ('Underwriters') has appealed.
 
 
 2
 In 1928, Herman F. Luer and his wife established a trust consisting of two lots and a dwelling house and other structures near Alton, Illinois. The residence was to be held for Mrs. Luer's use during her life and then for the benefit of their son Edward D. Luer. Upon his death, the trust estate was to go to Edward Luer's descendants. At the same time, Herman Luer created an income trust of which Edward Luer is the present beneficiary. The income trust was not introduced in evidence.
 
 
 3
 In 1962, Edward Luer purchased a homeowner's type insurance policy, with $20,000 insurance on the house and $8,000 insurance on the contents. On the face of the policy, the insured were shown as 'Mercantile Trust Company, trustee, under indenture of trust, dated September 25, 1928, and Edward D. Luer'. The previous insurance policy, expiring on July 9, 1963, listed the Mercantile (as trustee) as the only insured, and the amount of insurance on the dwelling house was $10,000. This policy was cancelled in 1962 when the homeowner's policy was issued.
 
 
 4
 Without an appropriate endorsement, according to the trial testimony a nonoccupant's interest cannot be insured under a homeowner's policy. Therefore, an endorsement was added to this 1962 homeowner's policy listing Mercantile as the 'additional insured'. The endorsement stated that the word 'insured' used in the policy 'also includes the person or organization named above', namely, Mercantile, but only with respect to insurance on the dwelling and appurtenant private structures. This endorsement clearly shows that Mercantile's insurance extended only to the dwelling house and appurtenances. Edward Luer (or his wife) purchased the homeowner's policy and paid the premiums thereon. Mercantile has never paid any of the insurance costs.
 
 
 5
 In February 1963, the Edward Luers moved 75% Of the contents of this residence to a storage company in Alton, Illinois. They drove to Golden, Colorado, on March 18, 1963. Early in the morning of March 20, there was a loud explosion in the residence, and it burned to the ground.
 
 
 6
 Mercantile presented a claim to Underwriters for $20,000 with respect to the destroyed residence. Through his attorneys in Alton, Illinois, Luer presented an $8,000 claim to Underwriters, enclosing a detailed, handwritten household inventory showing the total contents of the house as worth $32,105.35. During the course of investigation of the origin of the fire, Edward Luer told Underwriters' arson investigator that the only object moved out of the residence before the fire was his son Frank D. Luer's bed. In an ensuing deposition in California, where Edward Luer now resides, he repeated the statement that only his son's bed had been moved out of the residence. His deposition was signed and sworn to before a notary public.
 
 
 7
 Asserting Edward Luer's fraudulent statements about not having moved out any of the contents of the residence (except his son's bed) prior to the fire and claiming their insured value, Underwriters contends that the District Court erroneously entered judgment for Mercantile in the amount of the $20,000 policy coverage on the dwelling house. On the other hand, Mercantile asserts that this policy was divisible, so that Edward Luer's fraud with respect to the furnishings does not vitiate its claim to be paid the insured value of the dwelling.
 
 
 8
 To avoid liability, Underwriters relies on the following provisions in the insurance policy:
 
 
 9
 'This entire policy shall be void if, whether before or atter a loss, * * * in case of any fraud or false swearing by the insured relating thereto.'[1]
 
 
 10
 As noted, the policy names both Mercantile and Edward Luer as the insured. The pertinent liabilities of Underwriters are $20,000 for the dwelling and $8,000 for the contents of the dwelling. The endorsement which was attached in order to give Mercantile coverage for the dwelling (and the appurtenant private structures) states:
 
 
 11
 'The unqualified word 'insured' wherever used in this policy also includes the person or organization named above (Mercantile) * * *'.
 
 
 12
 The policy was purchased by Edward Luer. This accorded with the trust instrument, which made it his duty to pay for the insurance on the property and exonerated Mercantile from keeping it insured.
 
 
 13
 Underwriters argues that it is not liable for the damage to the dwelling house because there was fraud by the insured within the meaning of the above clause. The District Court found that Underwriters failed to establish fraud by Edward Luer. Underwriters assails this finding as clearly erroneous within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure. We agree that the finding cannot be sustained but nevertheless affirm.
 
 
 14
 As to Edward Luer's fraud, the uncontradicted evidence reveals that he was interviewed after the fire by Lamont Heidinger, Underwriters' arson investigator, and told Heidinger that 'his son's (Frank D. Luer's) bed * * * was the only thing he had moved out' of the residence prior to the fire.[2] Actually, three-fourths of the Luers' belongings had been placed in storage one month prior to the fire. However, after the fire, through Alton, Illinois, lawyers, Edward Luer presented a claim to Underwriters for $8,000 covering the contents of the house. This claim was supported by an extensive handwritten household inventory, concluding:
 
 
 15
 For the defense of fraud to apply, it is unnecessary that the statements of the insured be under oath. Gipps Brewing Corp. v. Central Manufacturers' Mutual Insurance Co., 147 F.2d 6, 9-11 (7th Cir. 1945); Appa v. Pennsylvania Fire Insurance Co., 307 Ill.App. 85, 94, 30 N.E.2d 100, 103 (1st Dist. 1940). Since there was no evidence to show that except for Frank Luer's bed all the furnishings of the Edward Luers were still in the dwelling at the time of the fire, the finding of no fraud must be set aside as clearly erroneous. Moreover, Edward Luer's false statements were with regard to a material matter, namely, the whereabouts of the furnishings of the dwelling when the fire occurred. His statements could easily have misled Underwriters' arson investigators. While it is true that Underwriters did not pay out any money with respect to the furnishing and thus was not deceived by Edward Luer's claims, it is well settled that unsuccessful fraud is also a defense to a fire insurance claim. Tenore v. American and Foreign Insurance Co. of N.Y., 256 F.2d 791, 793-794 (7th Cir. 1958), certiorari denied,358 U.S. 880, 79 S.Ct. 119, 3 L.Ed.2d 110.
 
 
 16
 This insurance policy was issued in Illinois, and both the real estate and personalty were located there. Being a diversity case, we must therefore look to Illinois law to determine whether this policy insuring the dwelling for $20,000 and the contents for $8,000 is to be regarded as entire or severable. Although there is a sharp conflict of authorities in the various states, in Illinois Capps v. National Union Fire Insurance Co., 318 Ill. 350, 355, 149 N.E. 247, 249 (1925), follows the rule that 'where the property is so situated that the risk on one item cannot be affected without affecting the risk on the other items, the policy should be regarded as entire and indivisible * * *'. Under the Capps case, it is clear that this insurance contract is indivisible as to risk. The plaintiff there was not permitted to prevail because the coverage of his interest in the home and his interest in the furniture was indivisible. But in the Capps case, only one insured was involved, so that the court did not have to decide whether the fraud of an insured would bar recovery by an innocent co-insured. Capps does not decide the issue whether Mercantile's interest in the house is divisible claimant-wise from Edward Luer's interest in the furniture.
 
 
 17
 In Westchester Fire Insurance Co. v. Foster, 90 Ill. 121 (1878), a fire insurance policy on a dwelling house was issued to Foster and Baumhard, with 'Loss, if any, first payable to Thomas J. Foster as his interest may appear'. Baumhard, the mortgagor, apparently caused the building to burn and Foster, the innocent mortgagee, brought suit. The Court held that Foster's rights could not be affected by the unlawful acts of Baumhard. Similarly here, Mercantile's rights should not be defeated by any wrongful acts of Edward Luer. Capps does not purport to limit the Westchester Fire Insurance Co. case. Therefore, it seems evident that the Illinois Supreme Court has recognized that the problems presented in the two cases are disparate. Although we and the parties have found no more recent Illinois case on this divisibility of claimants point, in Hoyt v. New Hampshire Fire Insurance Co.,92 N.H. 242, 29 A.2d 121, 148 A.L.R. 484 (1942), the policies insured three tenants in common of the property covered. One of the tenants in common intentionally set fire to the property. In allowing the innocent tenants in common to recover, even though they were jointly named in the policies in suit, the Supreme Court of New Hampshire held that a contract may be divisible in some respects and indivisible in others. The Court noted (29 A.2d at p. 123):
 
 
 18
 'The ordinary person owning an undivided interest in property, not versed in the nice distinctions of insurance law, would naturally suppose that his individual interest in the property was covered by a policy which named him without qualification as one of the persons insured.'
 
 
 19
 Other cases permitting an innocent coinsured to take despite arson or fraud committed by the other insured include Fidelity-Phenix Fire Insurance Co. of New York v. Queen City Bus & Transfer Co., 3 F.2d 784 (4th Cir. 1925); Rent-A-Car Co. v. Globe & Rutgers Fire Insurance Co., 158 Md. 169, 148 A. 252 (1930); Phoenix Assurance Company of N.Y. v. General Motors Acceptance Corp., 369 S.W.2d 528 (Tex.Civ.App.1963); Home Insurance Company v. Cohen, 357 S.W.2d 674, 676 (Ky.Ct.App.1962); Mechanics' Insurance Co. v. Inter-Southern Life Insurance Co., 184 Ark. 625, 43 S.W.2d 81 (1931); and Richardson v. Providence Washington Insurance Co., 38 Misc.2d 593, 237 N.Y.S.2d 893 (Sup.Ct.1963). The doctrine of these cases is approved in 5 Appelman Insurance Law and Practice, 3594 Note 97 (1941). These cases are persuasive here, for Mercantile had no control over the property and was unaware of Edward Luer's misconduct. The line of cases relied upon by Underwriters exemplified by Monaghan v. Agricultural Fire Insurance Co., 53 Mich. 238, 18 N.W. 797 (1884) is disapproved in the Appelman treatise (ibid). and is contrary to the Illinois Westchester Fire Insurance Co. case.
 
 
 20
 In the present case, Edward Luer had only a beneficial life interest in the property. We do not think that the Illinois courts would impute his fraud to the trustee or to his son Frank D. Luer, the innocent remainderman. We were informed at the oral argument that in the event of affirmance, the proceeds of this policy will be transferred by the Mercantile to the other 1928 trust of which Edward Luer is the income beneficiary. At the argument, the Mercantile suggested that if this Court determined that Edward Luer's statements were fraudulent, the $20,000 proceeds (including the income therefrom) should be held for his descendants. That suggestion accords with sound principles of trust and property law[3] and we adopt it so that he may not profit from his wrongdoing. Accordingly, the judgment of the District Court is affirmed with the qualification that none of the proceeds of this policy on the dwelling house be expended for the benefit of Edward Luer. In accord with Commonwealth Insurance Co. of N.Y. v. O. Henry Tent & Awning Co., 287 F.2d 316, 320 (7th Cir. 1961), certiorari denied, 368 U.S. 826, 82 S.Ct. 45, 7 L.Ed.2d 30, we also hold that it was not unreasonable for the District Court to award interest from a date 60 days after the loss instead of 60 days after the receipt of the sworn proof of loss.
 
 
 21
 Affirmed as modified.
 
 
 
 [1]
 Fraud is a defense under this clause if it occurs before or after the loss. See Sundquist v. Camden Fire Insurance Ass'n., 119 F.2d 955 (7th Cir. 1941), certiorari denied, 314 U.S. 658, 62 S.Ct. 110, 86 L.Ed. 527; Sundquist v. Hardware Mutual Fire Company, 296 Ill.App. 510, 16 N.E.2d 771 (2d Dist. 1938)
 
 
 [2]
 In Edward Luer's September 15, 1965, deposition taken in California in this case, he reiterated his statement that all his and Mrs. Luer's property was still in the house at the time of the fire, and that only his son's bed 'or luggage or anything like that' had been previously moved out. We are not relying on Luer's deposition testimony because of the rule that, in order to be a defense within an insurance fraud clause, any fraud must occur before legal proceedings have begun. Vernon v. Aetna Insurance Company, 301 F.2d 86, 90 (5th Cir. 1962), certiorari denied, 371 U.S. 819, 83 S.Ct. 33, 9 L.Ed.2d 59; American Paint Service v. Home Insurance Co. of New York, 246 F.2d 91, 94 (3d Cir. 1957); Tarzian v. West Bend Mutual Fire Insurance Co., 74 Ill.App.2d 314, 322, 221 N.E.2d 293, 297 (1st Dist. 1966); Annotation, 64 A.L.R.2d 962; 14 Couch on Insurance 2d 49:435
 
 
 [3]
 See Bogert, Trust & Trustees (2d ed.) 471; Restatement of the Law of Property (1936) 138