AMERICAN DIVER'S SUPPLY AND MANUFACTURING CORPORATION, a Colorado corporation, Bankrupt, Pacific Indemnity Company, Petitioner on Review-Appellee,

v.

Jon D. BOLTZ, Trustee, Respondent on Review-Appellant.

No. 72–1786.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 24, 1973.

Decided July 9, 1973.

John R. Trigg, and William J. Kirven, III, of Yegge, Hall & Evans, Denver, Colo., for petitioner on review-appellee.

Robert W. Caddes, Denver, Colo., for respondent on review-appellant.

Before SETH and HOLLOWAY, Circuit Judges, and LARAMORE,* Senior Judge.

LARAMORE, Senior Judge.

Appellant seeks review of the District Court's holding that their entire fire loss insurance claim is barred by the unsuccessfully inflated, fraudulent claims of the insured's former agents. The principal issue presented herein is whether *reliance* is a necessary element of a policy defense based on fraud, or is the entire policy, in fact, voided when the insured attempts to present fraudulent claims which the insurance company detects prior to payment and thus before having detrimentally acted upon the misrepresentations.

The loss claims of American Diver's Supply & Manufacturing Corporation ("ADS&M") stem from a major warehouse fire which it suffered in February 1970, at which time a valid, comprehensive-multi-peril insurance policy was in effect with Pacific Indemnity Company ("Pacific"). After the fire, but before the insurance adjuster arrived, a considerable amount of undamaged or slightly damaged inventory was moved, at the direction of the insured's sole shareholder, from the scene of the fire to another warehouse across the street. According to testimony of the insured's employees, this was done with the express intent of claiming these items as having been destroyed in the fire and thereby facilitating an unjustified increase in the insurance recovery.

* Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

Neither Donald Wilkerson, President of ADS&M, nor Jim Sexton, the inventory control clerk, apprised the insurance adjuster, Mr. Palmer, that this large amount of undamaged goods had been removed from the premises, but instead gave him the inventory control cards and indicated that any listed items not present in the amounts recorded on the cards were either destroyed by the fire or stolen. (There had been a certain amount of pilferage immediately after the fire.) Mr. Palmer apparently used these cards to compile his initial damage-loss list, but he and his assistants also proceeded to sift thru the debris to determine what corresponding charred residue remained. After so proceeding, Mr. Palmer compiled a second list which evidently enumerated fewer loss items than the original list. However, in some cases the adjuster still relied on the employees' claims that the insured had lost certain amounts of particular items, even though no residue for said items was to be found—since they had, in fact, been removed undamaged. Notwithstanding this method of derivation, the total amount of loss arrived at by Mr. Palmer was apparently less than what Mr. Wilkerson believed to be the actual damage loss. No proof of loss or official written claim of any kind was ever filed by the insured, except for the aforementioned written and verbal misleading assistance given to Mr. Palmer.

Following the adjuster's investigation, differences apparently arose over the coverage of certain items and Pacific filed suit for declaratory judgment in the District Court in and for the City and County of Denver, Colorado. On March 8, 1971, ADS&M, having been in financial straits even before the fire, was adjudicated bankrupt. Thereafter, the Trustee filed a petition for Order to Show Cause directed to Pacific as to why it should not pay over the value of the actual damage loss sustained by the insured. After abandoning its declaratory judgment action, Pacific resisted the Bankruptcy Court's show cause order on the grounds of fraud and no coverage. Following a hearing at which the foregoing facts were established, the Referee in Bankruptcy entered an order favorable to the Trustee. Pacific appealed to the U.S. District Court which subsequently reversed the Referee's order on the grounds that fraud had been established, as a matter of law, since reliance was not a necessary element in a defense of fraud under an insurance policy. The Trustee in Bankruptcy, Jon D. Boltz, has in turn perfected this appeal.

Appellant contends on this appeal, as he has earlier, that all of the elements of common law fraud as set forth in the landmark Colorado Supreme Court case of Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 462 (1937), must be proven and, as a result, Pacific's defense must fall for failure to establish that they relied or acted upon insured's concealments and misrepresentations to their detriment. Pacific maintains, on the other hand, that such reliance is not necessary here since the insurance contract provides:

> This entire policy shall be void if, whether before or *after a loss*, the insured has *willfully concealed* or misrepresented *any material fact or circumstance concerning* this insurance or *the subject thereof*, or the interest of the insured therein, *or* in case of any *fraud* or false swearing by the insured relative thereto. [Emphasis added.]

Both parties have admittedly bound themselves to the terms of the fire insurance contract, including the above "fraud clause," and thus we believe that this clause, on its face, should be dispositive of the appellant's allegations, for it is apparent that the provision not only prohibits "fraud" in the ordinary sense, but also willfully concealed or misrepresented material facts or circumstances concerning the subject of the insurance, *i. e.*, the damaged or destroyed property, regardless of whether there has been detrimental reliance thereon.

However, the appellant further contends that it would be inequitable and

unjust to require reliance in the "ordinary fraud" case, yet not in an insurance case. Although we consider the very existence of the "fraud clause" evidences the grounds for distinction, we shall elaborate on the justification and equity of the difference in requisites since this court and the Colorado courts, whose law is applicable here under *Erie*, have not previously addressed this issue.

As we have already indicated, we find the common law, pre-contract cases such as Morrison v. Goodspeed, *supra*, to be inapplicable, because the fraud clause intentionally imposes different standards of responsibility and damages—absolute honesty and forfeiture of *all* benefits of the policy and not merely unintended benefits—which removes this case from situations where a party seeks to rescind a contract without such a clause and thus must meet all of the requisites of common law fraud. Judicial approval of this distinct standard appears to have first been explicitly received in Chaachou v. American Central Insurance Co., 241 F.2d 889 (5th Cir. 1957), which dealt with the same provision of the New York Standard Form Fire Insurance Policy as we are concerned with herein.[1] The Fifth Circuit specifically held in that case that, under Florida law, prejudicial reliance was not a necessary element of a policy defense based on fraud. Since we can find nothing in the Colorado law which would suggest a contrary conclusion, we find the cogent reasoning of *Chaachou* equally applicable herein. The Fifth Circuit clearly demonstrates the justification for the necessary distinctions in stating:

> The contract does not spell out that it is only false swearing, misrepresentation, concealment or fraud which is successful that avoids the policy. Nor is there any reason why any such condition should be read into it. Clearly, in the absence of a statute, the law, which is founded on truth and justice, will not regard it as unsound that a person has lost the benefit of the contract by wilful, immoral, dishonest acts which the contract itself condemns.
>
> Moreover, if the law out of some misgivings about forfeitures, were to require that the insurer demonstrate that it has been misled to its prejudice by the fraud, the policy provision would be virtually worthless and put a premium on dishonest dealings by the assured. For if, by its own investigation, inspired perhaps by suspicions of the assured's efforts to misrepresent, the insurer satisfied itself that a fraud had been attempted and declined to pay, such a rule would mean that the assured's claim would then stand as though no dishonest acts whatsoever had been practiced. The mendacious assured, surveying the possibilities and contemplating prospective tactics and strategy in the handling of his claim, would sense immediately that *vis-a-vis* himself and the underwriter, there would be no risk at all in his deceit. If it worked, he would have his money and, at worst, could be compelled to disgorge only by affirmative suit by the insurer if the fraud were discovered in time to be legally or practicably effective. If it didn't work—if, before consummation, fraud was detected—he would suffer no disadvantage whatsoever. *It would be an everything-to-win, nothing-to-lose proposition.* [Id., 892, 893]

In addition to the foregoing policy reasons, the following factors also justify the distinctions. In the ordinary case of fraud, reliance is necessary because it must be shown that the misrepresentations or unjustified concealments were the *cause* of the duped party's action, e. g., entering into a contract to his detriment, which he would not have otherwise done but for the false representations. If reliance was not required, then

---

1. *Chaachou* has previously been cited with approval by this court in Buffalo Insurance Co. v. Amyx, 262 F.2d 898 (10th Cir. 1958), although the specific issue of reliance was not raised therein and we dealt with Oklahoma law.

anyone entering a contract fully aware of misrepresentations might later seek rescission of the contract if it did not work out as envisioned—even though the party entered into the agreement for independent reasons which he expected would offset the unbelieved false representations.

However, in the case of an insurance policy—or any other contract for that matter—which has a strict prohibition against misrepresentations with the stated penalty for a violation of said clause being a complete denial of policy benefits, to require detrimental reliance would have the practical effect of requiring the insurance company to always pay the damage claim first, even though it may have cause to suspect that it is false, and, if the subsequent investigation proved the claim to be false, then attempt to recover the entire payment at a later time from an insured who has already shown himself to be unreliable. To force such an Ostrich-like approach on the insurance companies would be inconsistent with the normal expectation of thorough investigation before action. We would not expect a man to buy a business based on representations which he knew or suspected to be false, nor should we expect an insurance company to knowingly pay an unjustified claim. There is no need for the insurance company to wait to be damaged when the deceit itself is the proscribed activity, and the stated penalty is forfeiture of all benefits.

While discovered misrepresentations do not normally result in penalties to the unsuccessful defrauder—other than losing the unjustified benefits of whatever action he sought to induce—that situation is unlike the case where the attempted defrauder is also expecting the insurance company to comply with the reimbursement provisions of a contract which they have entered into. The penalty for attempted fraud in an insurance case where a fraud clause exists, on the other hand, is not simply forfeiture of the excess or inflated recovery amount but the voiding of all actual loss benefits

as well. But we cannot accept that this is too harsh a consequence in view of the insured's being put on notice and the alternative of encouraging "an everything-to-win, nothing-to-lose proposition" for the insured. Thus we must conclude that the lack of detrimental reliance as a necessary element of a policy defense based on fraud, under Colorado law, is well-founded and the differences between this situation and common law fraud justify the distinctions in requisites and results.

The appellant also endeavors to distinguish the *Chaachou* case on the basis that a claim and proof of loss were filed in that case but not in the case at bar. While the majority of cases admittedly deal with false statements made in proofs of loss or sworn claims, neither the terms of the "fraud clause," nor the case law suggest that the fraudulent concealments or misrepresentations must necessarily be under oath to be actionable. Mercantile Trust Co. v. New York Underwriters Insurance Co., 376 F.2d 502 (7th Cir. 1967); Buffalo Insurance Company v. Amyx, 262 F.2d 898 (10th Cir. 1958). Notwithstanding appellant's untenable assertions to the contrary, the record is replete with evidence that insured's employees and agents deliberately and intentionally concealed and misrepresented material matters regarding the items which were destroyed in the fire. The effect of these fraudulent representations is the same whether they are made in a sworn proof of loss or an informal verbal discussion; that is, they violate the fraud clause and destroy the intended atmosphere of honest, good faith dealing in either case.

Although the insurance adjuster allegedly arrived at a total dollar amount of loss that was less than the insured expected, this does not mitigate the existence of the insured's fraudulent representations. Furthermore, the fact that a portion of the removed, undamaged inventory was not covered does not vitiate insured's conduct, since covered items such as j-valves, fish-finders, spear guns, underwater lights, oars and sun-

glasses were also removed with the express intent of concealing their existence. From a complete review of this record, we must conclude that the District Court did not err in finding that fraudulent representations and concealments in violation of the insurance policy had been made. In view of the foregoing, judgment is hereby affirmed.